**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CASSANDRA FAIRBANKS, an individual,** | Civil Action No. 1:17-cv-01052-CKK |
| **Plaintiff**, | |
| **v.** | ORAL HEARING REQUESTED |
| **EMMA ROLLER, an individual,** | |
| **Defendant**. | |

## DEFENDANT'S MOTION TO DISMISS

Defendant Emma Roller ("Roller"), by and through her undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby respectfully moves to dismiss the First Amended Complaint (the "Complaint") in this case.  In support of her motion, Roller relies on the accompanying Memorandum of Points and Authorities (the "Memorandum").

As set forth in the Memorandum, the Complaint fails to state a claim for defamation (the sole cause of action asserted in the Complaint) because (i) the challenged tweets posted by Roller on Twitter contain protected opinions rather than verifiable, objective statements of fact, and are therefore not actionable as defamation, and (ii) plaintiff is required to, but has not and cannot plausibly plead that the tweets were published with "actual malice."

### REQUEST FOR HEARING

Roller respectfully requests a hearing on her motion to dismiss.

Dated: October 23, 2017

Respectfully submitted,

/s/ *Laura R. Handman*

Laura R. Handman (DC Bar No. 444386)
Eric J. Feder (DC Bar No. 996955)

DAVIS WRIGHT TREMAINE LLP

1919 Pennsylvania Avenue N.W., Suite 800
Washington, DC  20006-3401
(202) 973-4200
(202) 973-4499 (fax)
laurahandman@dwt.com
ericfeder@dwt.com

*Attorneys for Defendant Emma Roller*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CASSANDRA FAIRBANKS, an individual,** | Civil Action No. 1:17-cv-01052-CKK |
| **Plaintiff**, | |
| **v.** | |
| **EMMA ROLLER, an individual,** | ORAL HEARING REQUESTED |
| **Defendant**. | |

**DEFENDANT EMMA ROLLER'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Laura R. Handman (DC Bar No. 444386)
Eric J. Feder (DC Bar No. 1048522)

DAVIS WRIGHT TREMAINE LLP

1919 Pennsylvania Avenue, N.W., Suite 800
Washington, DC  20006-3401
(202) 973-4200
(202) 973-4499 (fax)
laurahandman@dwt.com
ericfeder@dwt.com

*Attorneys for Defendant Emma Roller*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

STATEMENT OF FACTS ................................................................................................1

    A.    The Parties ...........................................................................................1

    B.    The Photo .............................................................................................2

    C.    Roller's Tweets About the Photo ........................................................3

           1.    The Allegedly Defamatory Tweets ..........................................3

           2.    Other Tweets Posted in the Full Thread and Plaintiff's Responses ............4

ARGUMENT .....................................................................................................................6

    I.    THE TWEETS ARE PROTECTED OPINION AND ARE NOT CAPABLE
        OF BEING PROVEN TRUE OR FALSE ..............................................8

        A.    The Tweets Are "Indefinite and Ambiguous" .............................9

        B.    Politicized Language Like "White Power" Constitutes a Protected
           Statement of Opinion and Cannot Be Characterized as True or False ......12

        C.    The Full Context of the Tweets Demonstrates that Tweets Were
           Non-actionable Opinion Based on Fully Disclosed Facts .........................14

        D.    Readers Understand That Statements Made In the Context of
           Political Debate Over Social Media Are Personal Opinions, Not
           Verifiable Facts .........................................................................16

    II.    PLAINTIFF DID NOT AND CANNOT PLAUSIBLY PLEAD THE
        TWEETS WERE PUBLISHED WITH "ACTUAL MALICE" ...........................18

        A.    Plaintiff Is a Public Figure ........................................................19

        B.    Plaintiff's Conclusory Allegations of Actual Malice Are Insufficient
           to Survive Dismissal ..................................................................21

CONCLUSION ................................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................................................7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...........................................................................................................7

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC,*
151 F. Supp. 3d 287 (E.D.N.Y. 2015), *aff'd*, 670 F. App'x 731 (2d Cir. 2016).....................18

*Biro v. Condé Nast,*
807 F.3d 541 (2d Cir. 2015)...........................................................................................7, 22

*Boley v. Atl. Monthly Grp.,*
950 F. Supp. 2d 249 (D.D.C. 2013) .............................................................................19, 22

*Buckley v. Littell,*
539 F.2d 892 (2d Cir. 1976).....................................................................................11, 12, 14

*Cafeteria Emps. Union, Local 302 v. Angelos,*
320 U.S. 293 (1943)........................................................................................................12

*Cibenko v. Worth Publishers, Inc.,*
510 F. Supp. 761 (D.N.J. 1981) ........................................................................................16

*Coles v. Washington Free Weekly, Inc.,*
881 F. Supp. 26 (D.D.C. 1995), *aff'd*, 88 F.3d 1278 (D.C. Cir. 1996)...............................8, 10

*Deripaska v. Associated Press,*
No. 17-913 (ESH), 2017 WL 4685297 (D.D.C. Oct. 17, 2017) .......................................7, 22

*Distributorsoutlet.com, LLC v. Glasstree, Inc.,*
No. 11-cv-6079, 2016 WL 3248310 (E.D.N.Y. June 10, 2016)..............................................4

*Edelman v. Croonquist,*
No. 09-1938, 2010 WL 1816180 (D.N.J. May 4, 2010)........................................................14

*Ellis v. Time, Inc.,*
No. Civ.A.94-1755, 1997 WL 863267 (D.D.C. Nov. 18, 1997) ...........................................21

*Farah v. Esquire Magazine, Inc.,*
863 F. Supp. 2d 29 (D.D.C. 2012), *aff'd*, 736 F.3d 528 (D.C. Cir. 2013).................1, 4, 8, 10

*Feld v. Conway*,
    16 F. Supp. 3d 1 (D. Mass. 2014) ............................................................4

*Forte v. Jones*,
    No. 11-cv-0718, 2013 WL 1164929 (E.D. Cal. Mar. 20, 2013)............................................14

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974).................................................................8, 19, 20, 23

*Hourani v. PsyberSolutions, LLC*,
    690 F. App'x 1 (D.C. Cir. 2017) (per curiam), (D.D.C. 2016)..............................19

*James Madison Ltd. v. Ludwig*,
    82 F.3d 1085 (D.C. Cir. 1996)........................................................27

*Jankovic v. Int'l Crisis Grp.*,
    822 F.3d 576 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1434 (2017) ..............................20, 26

*Kahl v. Bureau of National Affairs*,
    856 F.3d 106 (D.C. Cir. 2017)......................................................19, 25

*Klayman v. Judicial Watch, Inc.*,
    628 F. Supp. 2d 112 (D.D.C. 2009)....................................................22

*Koch v. Goldway*,
    817 F.2d 507 (9th Cir. 1987) .......................................................17

*Lane v. Random House, Inc.*,
    985 F. Supp. 141 (D.D.C. 1995)......................................................12

*Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*,
    838 F.2d 1287 (D.C. Cir. 1988)......................................................24

*Lohrenz v. Donnelly*,
    223 F. Supp. 2d 25 (D.D.C. 2002), *aff'd*, 350 F.3d 1272 .................................25, 26

*Lohrenz v. Donnelly*,
    350 F.3d 1272 (D.C. Cir. 2003)......................................................23, 24

*Mayfield v. NASCAR, Inc.*,
    674 F.3d 369 (4th Cir. 2012) .......................................................7

*McCaskill v. Gallaudet Univ.*,
    36 F. Supp. 3d 145 (D.D.C. 2014)....................................................9, 10, 13

*McDonald v. Wise*,
    769 F.3d 1202 (10th Cir. 2014) .....................................................7

*McFarlane v. Esquire Magazine*,
    74 F.3d 1296 (D.C. Cir. 1996) ......................................................................22, 26

*McFarlane v. Sheridan Square Press, Inc.*,
    91 F.3d 1501 (D.C. Cir. 1996) ......................................................................24, 25

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) .......................................................................7, 22

*Moldea v. N.Y. Times Co.*,
    15 F.3d 1137 (D.C. Cir.), *modified*, 22 F.3d 310 (D.C. Cir. 1994) ...........................15, 16, 25

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..............................................................................19

*Nurriddin v. Bolden*,
    818 F.3d 751 (D.C. Cir. 2016) ..........................................................................7

*O'Toole v. Northrop Grumman Corp.*,
    499 F.3d 1218 (10th Cir. 2007) ........................................................................4

*Ollman v. Evans*,
    750 F.2d 970 (D.C. Cir. 1984) (en banc) ....................................................... *passim*

*Packingham v. North Carolina*,
    137 S. Ct. 1730 (2017) ...............................................................................18

*Palin v. N.Y. Times Co.*,
    No. 17-cv-4853, 2017 WL 3712177 (S.D.N.Y. Aug. 29, 2017) ................................22

*Parisi v. Sinclair*,
    845 F. Supp. 2d 215 (D.D.C. 2012) ..................................................................23

*Parsi v. Daioleslam*,
    595 F. Supp. 2d 99 (D.D.C. 2009) .....................................................................9

*Parsi v. Daioleslam*,
    890 F. Supp. 2d 77 (D.D.C. 2012) ...........................................................23, 24, 26

*Pippen v. NBCUniversal Media, LLC*,
    734 F.3d 610 (7th Cir. 2013) ...........................................................................7

*Robertson v. Cartinhour*,
    867 F. Supp. 2d 37 (D.D.C. 2012) ....................................................................22

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) .............................................................................7

*SI03, Inc. v. Bodybuilding.com, LLC*,
  No. CV 07-6311-EJL, 2008 WL 11348459 (D. Idaho Dec. 23, 2008)...................................18

*Smith v. Sch. Dist. of Philadelphia*,
  112 F. Supp. 2d 417 (E.D. Pa. 2000) ....................................................................................14

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)...............................................................................................................23

*Tavoulareas v. Piro*,
  817 F.2d 762 (D.C. Cir. 1987) .........................................................................................13, 25

*Thomas v. News World Commc'ns*,
  681 F. Supp. 55 (D.D.C. 1988) ...........................................................................8, 11, 13, 17

*Time, Inc. v. Pape*,
  401 U.S. 279 (1971)...............................................................................................................25

*Waldbaum v. Fairchild Publ'ns, Inc.*,
  627 F.2d 1287 (D.C. Cir. 1980) ............................................................................................20

*Washington v. Smith*,
  80 F.3d 555 (D.C. Cir. 1996) ...........................................................................................10, 25

*Wensink Farm Seeds, Inc. v. Lafever*,
  No. 16-CV-1282, 2017 WL 2735573 (N.D. Ohio June 23, 2017) ............................................4

*Weyrich v. New Republic, Inc.*,
  235 F.3d 617 (D.C. Cir. 2001)..............................................................................................17

*White v. Fraternal Order of Police*,
  909 F.2d 512 (D.C. Cir. 1990) ..............................................................................................13

**State  and District of Columbia Cases**

*Competitive Enter. Inst. v. Mann*,
  150 A.3d 1213 (D.C. 2016) ...............................................................................................8, 15

*Doe v. Cahill*,
  884 A.2d 451 (Del. 2005) ......................................................................................................18

*Guilford Transp. Indus., Inc. v. Wilner*,
  760 A.2d 580 (D.C. 2000) ...........................................................................................9, 12, 13

*Jacobus v. Trump*,
  55 Misc. 3d 470, 51 N.Y.S.3d 330 (N.Y. Sup. Ct. 2017) .......................................................18

*Silverman v. Daily News, L.P.*,
  129 A.D.3d 1054, 11 N.Y.S.3d 674 (N.Y. App. Div. 2015) ..................................................16

*Summit Bank v. Rogers*,
 206 Cal. App. 4th 669, 142 Cal. Rptr. 3d 40 (2012)............................................................17

*Ward v. Zelikovsky*,
 136 N.J. 516, 643 A.2d 972 (N.J. 1994) ..............................................................................12

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................1, 7

**Constitutional Provisions**

U.S. Const. amend. I .......................................................................................................... *passim*

In this defamation action brought by one journalist against another, Plaintiff Cassandra Fairbanks asserts a single cause of action against the Defendant Emma Roller, arising from two tweets (the "Tweets") that Roller posted on April 28, 2017, expressing her opinion about a photo that Fairbanks herself posted on Twitter (the "Photo").  Roller now moves to dismiss the Amended Complaint ("Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6), because (i) the challenged Tweets contain protected opinions rather than verifiable, objective statements of fact, and are therefore not actionable as defamation, and (ii) plaintiff is required to, but has not and cannot plausibly plead actual malice.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiff is a "political activist" who describes her support of Bernie Sanders during the Democratic primary in 2016 as "prominent[]," and that her switch to supporting then-candidate Donald Trump in the 2016 Presidential election was "high profile."  Compl. at 1-2, ¶ 4.  She also purports to be an influential "grassroots journalist," who was "given White House press passes," and "us[es] social media to access the broader world."  *Id.* at 2.  She is currently a reporter for Bigleaguepolitics.com.  *Id.* ¶ 4.

Plaintiff has been profiled in several magazines and digital publications.[1]  A profile in *Cosmopolitan* described Plaintiff as a "leader in the Deplorable movement, a once-fringe faction

---

[1] *See, e.g.*, Andrew Marantz, *Trump Supporters at the Deploraball:  The journalist Cassandra Fairbanks, the co-founder of Vice Media Gavin McInnes, and other far-right V.I.P.'s celebrate their candidate's victory*, The New Yorker (Feb. 6, 2017), https://goo.gl/4Nfsd6.  On a Rule 12(b)(6) motion, a court may consider readily available, judicially noticeable news coverage, including Internet postings, about plaintiff and the broader context in which the allegedly defamatory statement was made.  *See, e.g.*, *Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 35 (D.D.C. 2012) (taking judicial notice on Rule 12(b)(6) motion of a broad range of materials, including "various internet postings" to establish the political context of satirical article related to

1

of the fractious right that sprang up to defend then-candidate Trump from his many detractors in

the Republican Party and beyond" who "parlayed [her] online following[] … into real-life cache

and influence."[2]  According to that profile, at the time of publication (May 2017), Plaintiff had

more than 95,000 followers on Twitter.  As of the date of this motion, she has over 124,000

followers.  *See* http://twitter.com/cassandrarules.

    The Defendant is a reporter for Splinter, which was formerly known as Fusion.  Compl.

¶ 5.  As of today, she has 26,500 followers on Twitter.  *See* http://twitter.com/EmmaRoller.

    **B.**    **The Photo**

    Since late 2016, there has been an ongoing public debate over whether ordinary hand

gestures were being used to convey political messages.  Numerous figures identified in

publications as being associated with the "alt-right" political movement posted photos online in

which they conspicuously and repeatedly posed while making the "OK hand gesture."[3]  News

organizations like the *New Yorker*, the *Hollywood Reporter*, and *Politico* published articles (all

published before the Tweets) discussing the hand gesture's use and meaning as a "hate symbol"

---

"birther" controversy), *aff'd*, 736 F.3d 528, 534 (D.C. Cir. 2013) (affirming appropriateness of taking judicial notice of "publicly available historical articles").

[2] Rebecca Nelson, *Cassandra Fairbanks Loved Bernie Sanders.  Now She's a Donald Trump Superfan*, Cosmopolitan (May 18, 2017), https://goo.gl/pDEzXb.

[3] These included avowed white nationalist Richard Spencer, *see* John Woodrow Cox, *'Let's party like it's 1933': Inside the alt-right world of Richard Spencer*, Wash. Post (Nov. 22, 2016), http://wapo.st/2gie6e2; and other alt-right affiliated figures, such as Milo Yiannapoulos, *see* Joseph Bernstein, *Here's How Breitbart and Milo Smuggled Nazi and White Nationalist Ideas Into the Mainstream*, Buzzfeed (Oct. 5, 2017), https://goo.gl/JZonCz.  *See generally* Rollin Bishop, *The OK Sign Is Becoming An Alt-Right Symbol:  First Pepe, now this*, The Outline (Apr. 24, 2017), https://goo.gl/ncy5r6 (collecting photos (and links to images of) alt-right figures and Pepe the Frog making hand gesture).

and the apparent connection between the gesture and other symbols, like the "Pepe the frog meme," now associated with the "alt-right" movement.[4]

In the midst of this controversy, on April 27, 2017, Plaintiff and "fellow new media journalist" Mike Cernovich attended a White House press briefing as credentialed reporters. Compl. at 2.  Plaintiff herself posted on Twitter several photos from the White House press room, including one in which she and Cernovich posed at the podium, standing side-by-side, both "flashing the OK hand gesture" (the "Photo").  *Id.*; *see* Feder Decl. Ex. 1.[5]

C.   **Roller's Tweets About the Photo**

1.   **The Allegedly Defamatory Tweets**

Almost immediately after Plaintiff posted the Photo, there was a public debate about the meaning conveyed by the "OK hand gesture" made by Plaintiff and Cernovich.  As Plaintiff acknowledges in her Complaint, multiple individuals, including Defendant Roller, expressed their "interpretation" of the gesture.  Compl. ¶¶ 8, 9-15.

Specifically, on the evening of April 28, 2017, after Plaintiff had posted on Twitter the Photo of herself and Cernovich making the hand gesture, Roller posted a series of tweets in response.  The first tweet was a re-tweet of Plaintiff's Photo with the caption "just two people

---

[4] *See* Scott Johnson, *48 Hours With the Media Troll Who Is Now Part of the White House Press Corps*, Hollywood Reporter (Apr. 28, 2017), https://goo.gl/Ye5d2L; Ben Schreckinger, *"Real News" Joins the White House Briefing Room*, Politico Magazine (Feb. 15, 2017), https://goo.gl/1nvK4J; Andrew Marantz, *Is Trump Trolling the White House Press Corps?*, The New Yorker (Mar. 20, 2017), https://goo.gl/NHCXp9.

[5] In October 2016, Cernovich was profiled in a *New Yorker* profile as the "meme mastermind of the alt-right," who is "an expert at using social media to drive alt-right ideas into the heart of American political discourse."  Andrew Marantz, *Trolls for Trump*, New Yorker (Oct. 31, 2016), https://goo.gl/vVaw7M; *see also* Abby Ohlheiser and Ben Terris, *How Mike Cernovich's influence moved from the Internet fringes to the White House*, Wash. Post (Apr. 7, 2017), http://wapo.st/2nJaALv.

doing a white power hand gesture in the White House."[6]  Compl. ¶ 6.  Eight minutes later Roller

posted a second tweet with the text "for reference," along with a link to an entry in the ADL Hate

Symbols Database for "White Power (hand sign)."  *Id.* ¶ 7.  The linked entry described a two-

handed gesture where the two hands form the shapes of the letters "W" and "P."[7]  The second

tweet also included a graphic that Roller found after a Google search depicting one hand making

the "OK" gesture with the letters "W" and "P" traced over the fingers, along with the words

"white" and "power."

      **2.**     **Other Tweets Posted in the Full Thread and Plaintiff's Responses**

In the Complaint, Plaintiff claims that these first two tweets posted by Roller are

defamatory, but fails to disclose other tweets Roller posted in the same thread and Plaintiff's own

tweets in which she responds to and engages in a debate over Roller's tweets.[8]

---

[6] *See* Emma Roller (@emmaroller) Twitter (Apr. 28, 2017 8:07 PM), available at
https://web.archive.org/web/20170501041302/https://twitter.com/emmaroller/status/8581556416
84320256.  Because Roller's Twitter account was set to automatically delete tweets after seven
days, the original Tweets at issue in the case are no longer live on her Twitter account.
However, the relevant tweets have been preserved by archiving websites, and the court can take
judicial notice of them.  *See, e.g.*, *Distributorsoutlet.com, LLC v. Glasstree, Inc.*, No. 11-cv-
6079, 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016) (collecting cases); *see also Wensink
Farm Seeds, Inc. v. Lafever*, No. 16-CV-1282, 2017 WL 2735573, at *6 (N.D. Ohio June 23,
2017).  *See generally O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir.
2007) ("It is not uncommon for courts to take judicial notice of factual information found on the
world wide web.").

[7] *See* Emma Roller (@emmaroller) Twitter (Apr. 28, 2017 8:07 PM), available at
https://web.archive.org/web/20170501041302/https://twitter.com/emmaroller/status/8581556416
84320256.

[8] These postings are not relied upon "for their truth, but merely to show that those statements
were made," in order to provide the broader context for the allegedly libelous Tweets at issue.
*Farah*, 863 F. Supp. 2d at 35; *see also Feld v. Conway*, 16 F. Supp. 3d 1, 4 (D. Mass. 2014)
(holding on motion to dismiss that allegedly defamatory tweet "cannot be read in isolation, but
[must be read] in the context of the entire discussion").

Two minutes after the second tweet, Roller posted a tweet stating, "people in the alt-right vigorously deny it has anything to do with white power, but keep using it to annoy the libtards."[9] Ten minutes later, she tweeted twice in response to another user's message (which is no longer available online), "yes, I know it's also a popular hand gesture. it just happens to be very popular among alt-right luminaries," and "but thank you for linking me to the 'OK' Wikipedia page lol."[10]   And two minutes after that, she re-tweeted a screenshot of a tweet posted by Plaintiff (with the caption "hmm") containing Plaintiff's tweeted response to another Twitter user who asked, "Can someone please tell me why Right media and personalities always have that hand sign? Heard it's 'white power' please tell me I'm wrong …"[11]   Plaintiff tweeted in response "It means 'my milkshake brings all the boys to the yard…'"[12]

On April 29, the day after Roller's Tweets, Plaintiff, in response to a tweet stating "Please tell me you guys made the OK sign to troll off this fantastic lefty hysteria," posted an emoji of a smiley face sticking its tongue out and winking.[13]   And in response to another user stating "So the Lefties 'Coded Racism' hype has now morphed into 'Subliminal White

---

[9] *See* Emma Roller (@emmaroller) Twitter (Apr. 28, 2017 8:17 PM), available at https://web.archive.org/web/20170501041302/https://twitter.com/emmaroller/status/858155641684320256.

[10] *See* Emma Roller (@emmaroller) Twitter (Apr. 28, 2017 8:27 PM), available at http://archive.is/qGCJU.

[11] Emma Roller (@emmaroller) Twitter (Apr. 28, 2017 8:29 PM), available at http://archive.is/qGCJU.

[12] *Id.  See* Kelis, "Milkshake" (Arista Records 2003).  *See* Anti-Defamation League, *No, the "OK" Gesture Is Not a Hate Symbol*, ADL Blog (May 1, 2017), https://goo.gl/dRf7zQ (cited in plaintiff's complaint, *see* Compl. at 1-2, ¶¶ 7, 10, 12) (referencing public debate over whether "white supremacists were drinking milk to show 'the superiority of the white race' and the 'purity of white milk'").

[13] Cassandra Fairbanks (@CassandraRules), Twitter (Apr. 29, 2017, 8:47 AM), https://twitter.com/CassandraRules/status/858346964513107968.

Supremacist Gestures'..."  Plaintiff tweeted "They've become so easy to troll you don't even have to make an effort anymore."[14]  Before filing this lawsuit, Plaintiff deleted a tweet from the morning of April 29 containing a different photo of herself making the hand gesture at the White House podium along with the caption "Should I make this my new avi [*i.e.*, Twitter "avatar," or profile photo]?  *The outrage is cracking me up.*"[15]

On May 1, 2017—three days after Roller's Tweets—the ADL itself weighed in on the ongoing public discourse over the meaning of the "OK" hand gesture, publishing an article on its website headlined "No, the 'OK' Gesture Is Not a Hate Symbol."  This article, which Plaintiff cites to extensively in the Complaint, *see* Compl. at 1, 2, ¶¶ 10, 12, describes a concerted effort to spread a message through social media, and specifically to journalists, that the "OK" gesture was a "symbol of white supremacy."[16]

## ARGUMENT

Plaintiff's Complaint purports to allege a single cause of action, for defamation. Compl. ¶¶ 19-23.  Specifically, based on two tweets from a thread of tweets posted by Roller, quoted above, Plaintiff alleges that "by falsely claiming that the Plaintiff made a white power hand gesture, the Defendant insinuated that the Plaintiff held white supremacist beliefs."  *Id.* ¶ 22.

---

[14] Cassandra Fairbanks (@CassandraRules), Twitter (Apr. 29, 2017, 8:34 AM), https://twitter.com/CassandraRules/status/858343836761956352.  Similarly, that same day, Cernovich (the other individual making the gesture in the Photo) re-tweeted a screen capture of Roller's original tweet, with the caption: "Trap was set and they walked into it.  Fake news looks trivial, absurd, and most of all dishonest."  Cernovich deleted that tweet sometime before this lawsuit was filed.  *See* Britain Eakin, *Reporter Sued After Falling for White-Power Hoax*, Courthouse News (June 5, 2017), https://goo.gl/L2g2iC (containing screenshot of deleted tweet).

[15] *See* Cassandra Fairbanks, (@CassandraRules), Twitter (Apr. 29, 2017 9:26 AM), available at http://archive.is/HDzMD (emphasis added).

[16] *See* Anti-Defamation League, *supra* note 12.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plaintiff's obligation to provide the grounds of her entitlement to relief "requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In determining that issue, the court need not "accept legal conclusions couched as factual allegations," *Nurriddin*, 818 F.3d at 756; and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Iqbal*, 556 U.S. at 678.

Courts in this Circuit have—in line with the decisions of every Circuit to have considered the issue[17]—specifically held that the *Twombly/Iqbal* pleading standard applies in defamation actions, including to the pleading of "actual malice," the fault standard that must be met by a public figure such as Plaintiff Cassandra Fairbanks.  *See, e.g.*, *Deripaska v. Associated Press*, No. 17-913 (ESH), 2017 WL 4685297, at *3 (D.D.C. Oct. 17, 2017).  As the Eleventh Circuit aptly explained, "application of the plausibility pleading standard makes particular sense when examining public figure defamation suits.  In these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel*, 816 F.3d at 702.  This is in keeping with the D.C. Circuit's long-held view that "summary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is

---

[17] *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *Biro v. Condé Nast*, 807 F.3d 541, 544–45 (2d Cir. 2015); *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012).

thwarted even if the defendant ultimately prevails." *Farah*, 736 F.3d at 534 (quoting

*Washington Post v. Keogh*, 365 F.2d 965, 998 (D.C. Cir. 1966)).

To prevail in a defamation suit, therefore, Plaintiff must adequately allege and then prove

that the statements complained of are i) defamatory; ii) capable of being proven true or false; iii)

'of and concerning' the Plaintiff; iv) false and v) in the case of public figures like Plaintiff, made

with "actual malice." *Coles v. Washington Free Weekly, Inc.*, 881 F. Supp. 26, 30 (D.D.C.

1995), *aff'd*, 88 F.3d 1278 (D.C. Cir. 1996).  In the instant case, Plaintiff's libel claim fails as a

matter of law and should be dismissed for two principal reasons.  First, the Tweets at issue are

expressions of subjective opinion, not statements of fact that are "capable of being proven true or

false."  Second, Plaintiff does not—and cannot—plausibly allege that Roller published the

Tweets with "actual malice."

## I.    THE TWEETS ARE PROTECTED OPINION AND ARE NOT CAPABLE OF BEING PROVEN TRUE OR FALSE

Roller's Tweets cannot be the basis of a libel claim and should be dismissed at the outset

because they are non-actionable expressions of subjective opinion.  This is because a pure

statement of opinion is not "objectively capable of proof or disproof," *Thomas v. News World

Commc'ns*, 681 F. Supp. 55, 63 (D.D.C. 1988), and "there is no such thing as a false idea."

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974).  Indeed, the D.C. Court of Appeals

recently reaffirmed the importance of protecting expressions of opinion:

> The First Amendment protects those engaged in a debate of such public concern
> in the expression of their ideas on the subject, even with pointed language, free of
> the chilling effect of potential civil liability.  As a matter of constitutional
> principle, when the issue is whether liability may be imposed for speech
> expressing scientific or policy views, the question is not who is right; the First
> Amendment protects the expression of all ideas, good and bad.

*Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1242 (D.C. 2016).

8

Courts in D.C. use a four-part inquiry set forth by the D.C. Circuit in *Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984) (en banc) (plurality op.), to determine whether a statement is an actionable statement of fact or a non-actionable expression of opinion:[18]

(1) First, courts look at the "specific language under scrutiny" to "determin[e] whether the statement has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous." *Ollman*, 750 F.2d at 979.

(2) Second, the court looks to the statement's "verifiability"—in other words, "is the statement capable of being objectively characterized as true or false?" *Id.*

(3) Third, the court looks to the "full context of the statement—the entire article or column, for example." *Id.*

(4) Last, the court considers "the broader context or setting in which the statement appears." *Id.*

Each of these factors demonstrates that Roller's tweets are protected expressions of opinion, rather than statements of verifiable fact.

## A.      The Tweets Are "Indefinite and Ambiguous"

As a threshold matter, the Tweets cannot be the basis for a libel claim because they merely involve the interpretation of a gesture that itself is inherently "indefinite and ambiguous." *Guilford*, 760 A.2d at 599 (dismissing suit because "[w]hether the plaintiffs are hostile to labor is not an issue of fact susceptible of objective proof"). It is black letter law that "[w]here a statement is so imprecise or subjective that it is not capable of being proved true or false, it is not

---

[18] Courts have affirmed the continued vitality of *Ollman*'s analytical framework. *See, e.g.*, *McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 159 (D.D.C. 2014); *Parsi v. Daioleslam*, 595 F. Supp. 2d 99, 109 (D.D.C. 2009); *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 599 (D.C. 2000).

actionable in defamation." *Farah*, 736 F.3d at 534–35 (citing *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624-26 (D.C. Cir. 2001)).

Plaintiff cannot seriously dispute that the "OK" hand gesture conveys a variety of meanings, depending on how and where it is used.  Even setting aside whether it has a political meaning, the "OK" hand gesture carries a multitude of meanings when used in daily life:  it can mean that the speaker agrees or approves of an idea ("Yes, OK"); it can express that the speaker is safe ("I'm OK"); but it can also express *disagreement with an idea* if the speaker intended to use the gesture sarcastically.  Since the "OK hand gesture" could mean different things in different contexts, there is no objectively "true" or "false" characterization of the way that the Plaintiff was using it when she "flashed" it from the White House press room.  Compl. at 1.  Therefore, this is a classic example of protected opinion.  Where "different constituencies can hold different—and completely plausible—views of Plaintiff's actions, statements characterizing those actions constitute protected opinion." *McCaskill*, 36 F. Supp. 3d at 159 (whether a petition could be characterized as "anti-gay" was not verifiable and dismissing complaint); *see also Coles*, 881 F. Supp. at 32 (statement that plaintiff's arguments before a regulatory commission were "vague" and "confusing" was protected opinion where "people could differ as to quality and thoroughness of Plaintiff's arguments"); *Washington v. Smith*, 80 F.3d 555, 557 (D.C. Cir. 1996) (statements criticizing basketball coach were not actionable where underlying "facts are open to different interpretations by reasonable persons").

In fact, Plaintiff *concedes* that Roller was merely "*interpreting* [the] gesture as a 'white power' gesture."  Compl. ¶ 15 (emphasis added).  And, more than that, Plaintiff confirms that at the time of the Tweets, there was an ongoing public dispute about the political meaning of the gesture when she points to a new article issued by the ADL in the days *after* the Tweets about

whether the "OK sign" was a symbol of hate speech or part of a "hoax."  *Id*. at 1, ¶ 10.  Simply

put, given the active disagreement in the press and on social media about the meaning of the

gesture, there can be no one objectively correct interpretation of the gesture made by Plaintiff at

the White House and tweeted out by her.[19]  Under these circumstances, Plaintiff simply cannot

establish that characterizing it as a "white power hand gesture" is objectively, verifiably *false*.

*See, e.g.*, *Thomas*, 681 F. Supp. at 63 ("A charge that plaintiffs' signs [at protest] are

'unAmerican,'… is not objectively capable of proof or disproof.").

      To the extent that the Plaintiff is arguing that the Tweets are "objectively false" because

the "OK" hand gesture also has other, innocuous uses—that it was allegedly "commonly found

in pictures of everyone from Jay-Z to President Obama himself," for example (Compl. ¶ 14)—

Plaintiff misses the point.  That the hand gesture carries some ordinary meanings does not

establish the existence of a single, correct meaning of the gesture.  Indeed, many hate symbols

previously were—or in some cases continue to be—wholly innocuous in some cultures.[20]  For

example, it is not false to call swastikas a "Nazi symbol," even though they may also appear in

Hindu temples.

---

[19] In an article published by *Buzzfeed* several days after the Tweets, Plaintiff openly
acknowledged that the gesture was part of a "troll meme going around saying that [the hand
gesture] meant white power," but that "it was a joke because Trump supporters are always being
called Nazis even when it isn't true."  Joseph Bernstein, *The Trump Internet Keeps Making Fake
Hate Symbols, And People Keep Falling For It*, Buzzfeed (Apr. 30, 2017),
https://goo.gl/WXCCG2.  Trying to parse the true intent behind a possibly ironic use of a "troll
meme" is impossible, and, as the Second Circuit held, "the moment that we are involved in
ascertaining what meaning [a plaintiff] purport[ed] to convey, … we are in the area of opinion as
opposed to factual assertion."  *Buckley v. Littell*, 539 F.2d 892, 892 (2d Cir. 1976).

[20] The ADL "Hate Symbols" Database is filled with phrases that would be innocuous in most
contexts, but that have specific meanings for white supremacists—like "100%" or "14 words."
*See* https://www.adl.org/education/references/hate-symbols/100 ("100% is shorthand among
white supremacists for '100% white'…."); https://www.adl.org/education/references/hate-
symbols/14-words ("'14 Words' is a reference to the most popular white supremacist slogan in
the world: 'We must secure the existence of our people and a future for white children.'").

In sum, where, as here, a statement merely "reflects differing interpretations of … murky facts," by "expressing a point of view only … the challenged language is immune from liability." *Lane v. Random House, Inc.*, 985 F. Supp. 141, 151–52 (D.D.C. 1995) (citation omitted) (where "the actual facts will never be verifiable to everyone's satisfaction," statements expressing an interpretation are "merely statements of [the defendant's] argument or opinion").

### B.     Politicized Language Like "White Power" Constitutes a Protected Statement of Opinion and Cannot Be Characterized as True or False

Even if the meaning of this hand gesture were somehow susceptible to objective proof of falsity (which it is not), the specific language used in the Tweets—particularly the term "white power"—shows it to be "unmistakably a loosely definable, variously interpretable statement[ ] of opinion ... made inextricably in the contest of political, social or philosophical debate ...." *Ollman*, 750 F.2d at 987 (citing *Buckley*, 539 F.2d at 895).

The Supreme Court long ago held that "to use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies—like 'unfair' or 'fascist'—is not to falsify facts." *Cafeteria Emps. Union, Local 302 v. Angelos*, 320 U.S. 293, 295 (1943). Accordingly, "[m]ost courts that have considered whether allegations of racism, ethnic hatred or bigotry are defamatory have concluded for a variety of reasons that they are not." *Ward v. Zelikovsky*, 136 N.J. 516, 533, 643 A.2d 972, 980–82 (N.J. 1994) (collecting cases). That is primarily because these types of terms bear meanings that are "so debatable, loose and varying, that they are insusceptible to proof of truth or falsity." *Buckley*, 539 F.2d at 894 (use of terms "fascism," "fellow traveler" and "radical right" not actionable).[21]

---

[21] *See Ollman*, 750 F.2d at 987 (term "political Marxist" is "obviously unverifiable"); *Guilford*, 760 A.2d at 598 ("[T]o say of one: you are reactionary, you are undemocratic, you are a nationalist, you are an isolationist, you are a New Dealer, you are a Union Leaguer, you are

For example, when an article reported that the plaintiff had "signed an 'anti-gay' marriage petition," a court in this district held that "calling the petition or Plaintiff 'anti-gay' certainly constitutes a protected statement of opinion, rather than a false declaration of fact." *McCaskill*, 36 F. Supp. 3d at 159.  In so holding, the court reasoned that "the term 'anti-gay' carries a host of definitions and numerous connotations," and "[i]ts common usage or meaning is thus exceedingly difficult to pin down."  *Id.*

The same analysis holds for Roller's "interpretation" of the gesture as a "white power hand gesture."  As an initial matter, contrary to the Complaint's conclusory allegations, a tweet simply stating that Plaintiff made a particular hand gesture cannot reasonably be read to imply that Plaintiff personally believes in "white power" or "h[olds] white supremacist beliefs." Compl. ¶ 22.  *See Guilford*, 760 A.2d at 596 (a libel claim based on allegedly defamatory implications from concededly true facts must make "an especially rigorous showing" that the language may be "reasonably read to impart the false innuendo," and that it "affirmatively suggest[s] that the author intends or endorses the inference") (quoting *Chapin v. Knight–Ridder, 993 F.2d 1087, 1092–93 (4th Cir. 1993)).[22] And, in any event, Roller's own tweets specifically negate that implication, acknowledging that "people in the alt-right vigorously deny [the hand gesture] has anything to do with white power, but keep using it to annoy the libtards."

But even if Roller *had* directly accused Plaintiff of being a "white supremacist" or a "racist," that would still not be actionable because it would constitute non-actionable opinion.

---

opposed to labor, you are a coddler of labor, is … to express an opinion."); *Thomas*, 681 F. Supp. at 63 ("unAmerican," "like the label 'fascist'" is "not objectively capable of proof or disproof").

[22] *See also White v. Fraternal Order of Police*, 909 F.2d 512, 522 (D.C. Cir. 1990).  As the D.C. Circuit has affirmed, "[n]othing in law or common sense supports saddling a libel defendant with civil liability for a defamatory implication nowhere to be found in the published article itself." *Tavoulareas v. Piro*, 817 F.2d 762, 781 (D.C. Cir. 1987).

As courts recognize, these terms mean many different things to different people and do not carry a single fixed definition that could be the basis of an objectively true or false statement.  *See, e.g.*, *Edelman v. Croonquist*, No. 09-1938, 2010 WL 1816180, at *5–6 (D.N.J. May 4, 2010) ("The defendant's characterization of her in-laws as racists is a subjective assertion, not sufficiently susceptible to being proved true or false to constitute defamation."); *Smith v. Sch. Dist. of Philadelphia*, 112 F. Supp. 2d 417, 429 (E.D. Pa. 2000) (accusation that plaintiff was "racist and anti-semitic" "would be unflattering, annoying and embarrassing," but "does not rise to the level of defamation as a matter of law because it is merely non-fact based rhetoric").

Courts draw a sharp distinction between "an allegation of membership in the Ku Klux Klan," which "is actionable," and an "allegation that a person is 'racist,'" which "is not actionable because the term 'racist' has no factually-verifiable meaning." *Forte v. Jones*, No. 11-cv-0718, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013); *see also Buckley*, 539 F.2d at 894 (distinguishing "allegations of membership or well-defined political affiliation," like being a "member of the Communist party" from use of terms like "'fellow traveler,' 'fascism' and 'radical right.'").  Roller did not state or imply that Plaintiff was a member of any defined organization—she simply conveyed her opinion about the meaning of the gesture itself.  And to the extent Roller was conveying her opinion that a gesture that had been associated with the alt-right was also associated with "white power," that is not subject to objective proof of falsity.

### C. The Full Context of the Tweets Demonstrates that Tweets Were Non-actionable Opinion Based on Fully Disclosed Facts

*Ollman* also instructs courts to look to the "full context of the statement—the entire article or column, for example—inasmuch as other, unchallenged language surrounding the allegedly defamatory statement will influence the average reader's readiness to infer that a particular statement has factual content."  750 F.2d at 979.  Here, the Tweets themselves—

particularly when read in the context of the other tweets Roller posted in the same thread—make

clear that Roller was "expressing a subjective view, an interpretation, a theory, conjecture, or

surmise, rather than claiming to be in possession of objectively verifiable facts." *Mann*, 150

A.3d at 1241 (citation omitted).  It is well settled that,

> when a writer gives a statement of opinion that is based upon *true* facts that are
> revealed to readers or which are already known to readers, such opinions
> generally are not actionable so long as the opinion does not otherwise imply
> unstated defamatory facts.  Because the reader understands that such supported
> opinions represent the writer's interpretation of the facts presented, and because
> the reader is free to draw his or her own conclusions based upon those facts, this
> type of statement is not actionable in defamation.

*Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1144–45 (D.C. Cir.), *modified*, 22 F.3d 310 (D.C. Cir.

1994).

Roller fully laid out the basis to support the opinion she expressed in her Tweets: the

photo of Plaintiff making the hand gesture; the link to the ADL Hate Symbols database entry;

and the "W"/ "P" (White Power) image (which Plaintiff does not suggest was created or

fabricated by Roller).  She also expressly stated that her assessment was based on her

observation that the gesture "happens to be very popular among alt-right luminaries."

Further, Roller provided a link to the ADL webpage "for reference," with no affirmative

statement that the ADL had said anything about "[Plaintiff's] hand signal" at all.[23]  A reader

could have concluded that the ADL's article about a two-handed gesture had little bearing on the

meaning of a one-handed gesture, or the reader could find the recognized existence of "white

power hand gestures" generally to be relevant to the consideration of the meaning of the gesture

---

[23] The Complaint's allegation that Roller "published a claim that the [ADL] identified Fairbanks'
hand signal as a two-handed hand sign wherein one hand forms a letter 'W' and the other hand
forms a letter 'P,' to represent 'WP' or 'White Power'" is directly contradicted by the Tweet
itself.  Compl. ¶ 7.

that Plaintiff and Cernovich were making in the Photo.  In other words, all Roller did was lay out the facts before the reader, provide her own interpretation of those facts, and leave it to the reader "to draw his or her own conclusions based upon those facts."  *Moldea*, 15 F.3d at 1145.

In a similar case, a police officer sued the publisher of a sociology textbook for including a photo of him prodding an African-American man with a nightstick, along with a caption raising the rhetorical question whether the officer would have taken the same action "if the 'offender' were a well-dressed, middle-aged white person."  *Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 764 (D.N.J. 1981).  The court dismissed the case, and held that, "[e]ven if innuendo implying that [the] plaintiff is racially prejudiced were drawn [from the photograph and caption], it would be insufficient to constitute actionable libel," because "the innuendo … is simply the author's commentary on undisputed facts," and is therefore "editorial opinion, safeguarded by the First Amendment."  *Id.* at 765.[24]  The same reasoning applies here and compels dismissal of the suit.

### D.   Readers Understand That Statements Made In the Context of Political Debate Over Social Media Are Personal Opinions, Not Verifiable Facts

Finally, the Tweets are part of the vibrant political debate that takes place over social media and are recognized as opinion, not fact.  Courts have repeatedly emphasized the principle that accusations made "in the contest of political, social or philosophical debate" are understood to be opinion.  *Ollman*, 750 F.2d at 987 (en banc); *see also id.* at 1013 (McKinnon, J., concurring) ("There can be no doubt that in the context of heated political debate," an accusation would be "taken by the readers to whom it was addressed as a statement of political opinion");

---

[24] *See also Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 11 N.Y.S.3d 674, 676 (N.Y. App. Div. 2015) (newspaper article alleging that plaintiff authored "racist writings" and had ties to a "white supremacist group" was non-actionable opinion where defendants "made the statements with express reference to all the written materials authored by plaintiffs").

*Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987) (noting that where the "circumstances of a statement are those of a heated political debate, [ ] certain remarks are necessarily understood as ridicule or vituperation, or both, but not as descriptive of factual matters").  Thus, in *Weyrich*, 235 F.3d at 620, the court held an accusation in a magazine profile that a political activist displayed "bouts of paranoia" was protected opinion.  The term "paranoia," was not presented as a clinical diagnosis, but was instead used to "embellish the author's view of [the plaintiff's] political zealotry and intemperate nature," and was therefore "protected political commentary." *Id.  See also Thomas*, 681 F. Supp. at 62 (allegedly defamatory statements that plaintiff's actions were "unAmerican" amounted to "vigorous espousal of a political position contrary to plaintiffs'").

Here, the Complaint itself places the Tweets squarely in the context of a "political war" between "ideological adversaries."  Compl. at 2; *see also, e.g.*, *id.* at 1 (alleging that Roller "smear[ed] the reputation of a competitor journalist simply because of politics").  A reader would naturally understand accusations made in such a context as reflecting subjective political disagreements, and not the assertion of verifiable facts.

The statements also appeared in social media – on Twitter – a forum well known for the pithy exchange of opinions. As the D.C. Circuit explained in *Ollman*, "[d]ifferent types of writing have … widely varying social conventions which signal to the reader the likelihood of a statement's being either fact or opinion."  750 F.2d at 979.  Thus, "[n]ot only commentators, but courts as well have recognized that online blogs and message boards are places where readers expect to see strongly worded opinions rather than objective facts."  *Summit Bank v. Rogers*, 206

Cal. App. 4th 669, 696–97, 142 Cal. Rptr. 3d 40, 60 (2012) (collecting cases).[25]  This principle

applies even more strongly to Twitter, in which users are limited to 140 characters to post their

off-the-cuff thoughts, which appear in a continually updating stream.  *See, e.g.*, *Jacobus v.*

*Trump*, 55 Misc. 3d 470, 484, 51 N.Y.S.3d 330, 343 (N.Y. Sup. Ct. 2017) (dismissing a libel

claim where President Trump's tweets read in context were expressions of opinion, not fact,

noting the "informal nature of conversation on Twitter") (citation omitted).

* * *

The combined effect of all these factors leads to the overwhelming conclusion that the

Tweets amount to subjective, non-actionable opinion, and cannot support a libel claim.  For that

reason alone, the Complaint must be dismissed.

## II.     PLAINTIFF DID NOT AND CANNOT PLAUSIBLY PLEAD THE TWEETS WERE PUBLISHED WITH "ACTUAL MALICE"

The Complaint must be dismissed for another separate and independent reason—because

Plaintiff is a public figure, she must adequately plead actual malice.  Based on the allegations of

the Complaint, as well as materials of which the Court can take judicial notice, Plaintiff has not

and cannot do so.

---

[25] *See also Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295
(E.D.N.Y. 2015) ("New York courts have consistently protected statements made in online
forums as statements of opinion rather than fact."), *aff'd*, 670 F. App'x 731 (2d Cir. 2016); *SIO3,*
*Inc. v. Bodybuilding.com, LLC*, No. CV 07-6311-EJL, 2008 WL 11348459, at *5 (D. Idaho
Dec. 23, 2008) (acknowledging the "general understanding that Internet blogs, message boards,
and chat rooms are, by their nature, typically casual expressions of opinion"); *Doe v. Cahill*, 884
A.2d 451, 465 (Del. 2005) ("Blogs and chat rooms tend to be vehicles for the expression of
opinions; by their very nature, they are not a source of facts or data upon which a reasonable
person would rely."); *cf. Packingham v. North Carolina*, 137 S. Ct. 1730, 1735–36 (2017)
(recognizing "cyberspace … and social media in particular" as among "the most important
places … for the exchange of views").

### A.    Plaintiff Is a Public Figure

In light of this country's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), the Supreme Court has held that the First Amendment provides heightened protection against libel suits brought by individuals "who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures." *Gertz*, 418 U.S. at 342. Whether a defamation plaintiff is a public figure is a question of law for the Court to resolve. *Kahl v. Bureau of National Affairs*, 856 F.3d 106, 114 (D.C. Cir. 2017). Courts therefore regularly resolve that question at the pleading stage based on the allegations of the complaint and information of which the Court can take judicial notice. *See, e.g.*, *Hourani v. PsyberSolutions, LLC*, 690 F. App'x 1, 3 (D.C. Cir. 2017) (per curiam), *aff'g* 164 F. Supp. 3d 128, 131 & n.1, 136 (D.D.C. 2016); *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 260-62 (D.D.C. 2013).

In this case, Plaintiff essentially concedes that she is a public figure. Her own Complaint describes her as an "advocate journalist" (who was given White House press access) and a "political activist" whose support of Bernie Sanders during the Democratic primary in 2016 was "prominent[]" and her switch to supporting President Trump "high profile." Compl. 1-2, ¶ 4. She is an influential "grassroots journalist" who "us[es] social media to access the broader world." *Id.* at 2. She has been profiled in national publications and referred to as a "social media star" and a "leader in the Deplorable movement." *See supra* notes 1-2. She has published hundreds of articles on political and cultural issues at various publications, and has over 100,000

followers on Twitter.[26]   As such, Plaintiff is a public figure and faces the heavy burden of

adequately pleading "actual malice."

Even if Plaintiff makes the claim that she is not a "general purpose" public figure, she

cannot escape the burden of a higher pleading standard because it is beyond dispute that Plaintiff

is a "limited purpose" public figure.   Limited purpose public figures are those who "thrust

themselves to the forefront of particular public controversies in order to influence the resolution

of the issues involved." *Gertz*, 418 U.S. at 345.   Courts in this Circuit employ a three-part test to

make that determination: (1) Is there a public controversy?; (2) Did the plaintiff "play[] a

significant role in that controversy"?; and (3) Was the allegedly defamatory statement "germane

to the plaintiff's participation in the controversy"? *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576,

585 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1434 (2017); *see also Waldbaum v. Fairchild

Publ'ns, Inc.*, 627 F.2d 1287, 1296-98 (D.C. Cir. 1980).   The answer is a resounding yes to each

of those factors.

First, the Complaint concedes that the challenged Tweets addressed an active public

controversy.   Compl. at 2 (alleging that the Tweets should be viewed in the context of a public

debate over "fake news" and the "burgeoning gap within the world of journalism" between

"grassroots journalists" like Plaintiff and "gatekeeper" journalists like Roller).   The debate over

---

[26] *See, e.g.*, Cassandra Fairbanks, *Trump Supporters Hold #KeepBannon Flash Mob at White House (VIDEOS)*, Big League Politics (Apr. 15, 2017), https://goo.gl/s4beL9; Cassandra Fairbanks, *Majority of Americans Believe Mainstream Media Report Fake News*, Sputnik News (Mar. 29, 2017), https://sptnkne.ws/dWtj; Cassandra Fairbanks, *BuzzFeed Trolled by Russian Tech Exec in Dossier Lawsuit Filing*, Sputnik News (Mar. 29, 2017), https://sptnkne.ws/dWrH; Cassandra Fairbanks, *FBI to Investigate Anti-Milo Yiannapoulos Riots in Berkeley*, Sputnik News (Feb. 8, 2017), https://sptnkne.ws/d48Q; *see also* Cassandra Fairbanks (@CassandraRules), Twitter (Sept. 13, 2016), https://goo.gl/9cH5aq (linking to article by Plaintiff in Sputnik headlined "How a Harmless Frog Became a 'Nazi Symbol': Pepe's an Issue in US Election," and explaining Pepe meme).

"fake news" and the rise of new "advocate journalists" like the Plaintiff have been extensively reported on and commented on in the media.[27]   Second, Plaintiff plays a regular and undeniably significant role in this controversy, including by writing articles and posting on social media. *See supra* note 26.  *See, e.g., Ellis v. Time, Inc.*, No. Civ.A.94-1755, 1997 WL 863267, at *5 (D.D.C. Nov. 18, 1997) (photojournalist who inserted himself in controversy over whether rival publication had faked certain photos by posting about it online forum was limited purpose public figure).  Third, the Tweets here related directly to Plaintiff's role as a "grassroots" journalist, who was able to obtain White House press credentials, and the political message conveyed by Plaintiff's own tweet of a photo of her making the "OK" hand gesture (at a time when it was publicly associated with the alt-right) in the White House press room.  Therefore, for the purposes of this action, Plaintiff is, at the very least, a limited purpose public figure.

Under these circumstances, as either a public figure or a limited purpose public figure, the First Amendment requires that Plaintiff establish that the allegedly defamatory statements were published with actual malice.

### B.      Plaintiff's Conclusory Allegations of Actual Malice Are Insufficient to Survive Dismissal

Even if Plaintiff could somehow establish that Roller's subjective characterization of Plaintiff's hand gesture was objectively "false" (which she cannot for all of the reasons outlined

---

[27] *See, e.g.*, Mallory Shelbourne, *Writer who pushed 'Pizzagate' conspiracy theory says he'll attend WH briefing*, The Hill (Apr. 25, 2017), https://goo.gl/4TMyGs (discussing Mike Cernovich); Charlie Warzel, *Pro-Trump Media Has A New Obsession: The White House Briefing Room*, Buzzfeed (Mar. 28, 2017), https://goo.gl/UmpJeJ; Callum Borchers, *A conspiracy theory-spreading website now has a seat in the White House briefing room*, Wash. Post (Feb. 14, 2017), http://wapo.st/2kPWQR2.

in Section I *supra*),[28] Plaintiff has not adequately pleaded facts that show that Roller acted with actual malice, which is fatal to the Complaint. *See Deripaska*, 2017 WL 4685297, at \*6 (dismissing claim where plaintiff only "makes an accusation that does not come close to plausibly alleging that [the defendant] acted with actual malice or reckless disregard for the facts when it published the article in question") (citing *Lohrenz v. Donnelly*, 350 F.3d 1272, 1286 (D.C. Cir. 2003)).[29]

Plaintiff faces a "daunting" task in pleading "actual malice." *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996). To meet the standard, a plaintiff must plausibly allege "not merely that the defamatory publication was false, but that the defendant either knew the statement to be false or that the defendant 'in fact entertained serious doubts as to the truth of his publication.'" *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112, 154 (D.D.C. 2009) (Kollar-Kotelly, J.) (quoting *Tavoulareas*, 817 F.2d at 775-76). The standard is "subjective," and the plaintiff must allege and prove that the defendant "actually entertained a serious doubt." *Id.* (quoting *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (D.C. Cir. 1996)).

---

[28] Plaintiff also has not – and cannot – adequately plead that the Tweets were "materially false," which, as a public figure, she must also do to survive dismissal. *See, e.g.*, *Boley*, 950 F. Supp. 2d at 263 (dismissing libel claim over characterization of plaintiff as "warlord," where plaintiff "adduced no *facts* indicating that the 'warlord' statements were false … offering only broad, conclusory denials of [the] comments"); *Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 59 (D.D.C. 2012) (granting motion to dismiss libel claim based on statements that plaintiff was the subject of a criminal investigation and was found liable for breach of fiduciary duties and legal malpractice, because the statements were substantially true based on public records). *See supra* notes 3-4.

[29] *See also Michel*, 816 F.3d at 702; *Biro*, 807 F.3d at 546; *Palin v. N.Y. Times Co.*, No. 17-cv-4853, 2017 WL 3712177, at \*1 (S.D.N.Y. Aug. 29, 2017) (dismissing libel claim for failure to adequately plead actual malice, explaining "if political journalism is to achieve its constitutionally endorsed role of challenging the powerful, legal redress by a public figure must be limited to those cases where the public figure has a plausible factual basis for complaining that the mistake was made … with knowledge it was false or with reckless disregard of its falsity").

Plaintiff makes only conclusory allegations that, in characterizing Plaintiff's gesture as a "white power hand gesture," "Roller knew this to be false," Compl. at 2, and that she published the Tweets "with actual knowledge that caption was not true or with reckless disregard as to its truth." *Id.* ¶ 21.  But Plaintiff does not allege a single specific fact that would plausibly support these conclusory assertions.  *See Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218-19 (D.D.C. 2012).

Instead, Plaintiff purports to allege that Roller departed from "standards of due diligence for a professional journalist" when she failed to: (1) adequately investigate; (2) contact Plaintiff before she "interpreted" her hand gesture; and (3) retract the Tweets after the ADL published an article about the hand gesture three days after the Tweets were posted.  Compl. ¶¶ 12, 15, 16.  But these allegations cannot plausibly establish actual malice as a matter of law.

First, the law is clear that "mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth." *Gertz*, 418 U.S. at 332.[30]  *See Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 81 (D.D.C. 2012) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989)) (allegations of even "'highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers' do[] not establish actual malice").  Therefore, Roller's alleged failure to "review[] the actual website of the Anti-Defamation League," and "speak[]to the author of any article on the gesture," Compl. ¶ 16, cannot be the basis for a showing of "actual malice."

Conversely, any further "investigation" of the hand gesture by "perform[ing] a 5-second 'Google Image Search,'" or by "otherwise look[ing] for similar photos of the gesture," Compl.

---

[30] *See also St. Amant v. Thompson*, 390 U.S. 727, 733 (1968) ("Failure to investigate does not in itself establish bad faith."); *Lohrenz*, 350 F.3d at 1285 ("[F]ailure to verify statements with the plaintiff and reliance upon some biased sources, in themselves, do not amount to reckless disregard of the truth.") (citation omitted).

¶ 14, as Plaintiff suggests, would have confirmed that it had been conspicuously used by "alt-right" figures—and that numerous published articles had reported on the association between the gesture and "white power." *See supra* notes 3-4. It is well settled that reliance on prior publications in "reputable sources" "would preclude any finding of actual malice as a matter of law." *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1298 (D.C. Cir. 1988) (reliance on published articles negated possibility of finding actual malice in characterizing plaintiff organization as "anti-Semitic"); *see also McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1510 (D.C. Cir. 1996) (rejecting notion that "anything short of interviewing those with first-hand knowledge amounts to 'willful blindness,'" and reaffirming that "good faith reliance on previously published reports in reputable sources … precludes a finding of actual malice as a matter of law") (citation omitted).

Second, Roller had no obligation to "reach[ ] out to [Plaintiff]" before "interpreting" (Compl. ¶ 15) the hand gesture that Fairbanks made. *See McFarlane v. Sheridan Square Press*, 91 F.3d at 1510 (failure to contact plaintiff about the allegations does not support actual malice); *Parsi*, 890 F. Supp. 2d at 90 ("[F]ailure to contact one of the subjects of an article does not establish actual malice."). And yet, a review of Roller's entire tweet thread about the hand gesture shows that she did provide the other side of the story, despite no obligation to do so, including a screenshot containing one of Plaintiff's own "explanations" for the meaning of the hand gesture. Roller also expressly noted that "people in the alt-right vigorously deny it has anything to do with white power, but keep using it to annoy the libtards." *See supra* at 5. As the D.C. Circuit has affirmed, "[r]eporting perspectives at odds with the publisher's own 'tend[] to rebut a claim of actual malice.'" *Lohrenz*, 350 F.3d at 1286 (quoting *McFarlane v. Esquire*, 74 F.3d at 1304).

Third, the notion that "actual malice" can be established by failing to retract an already published statement has been thoroughly rejected by courts. "[T]here is no duty to retract or correct a publication, even where grave doubt is cast upon the veracity of the publication after it has been released."[31] *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 56 (D.D.C. 2002), *aff'd*, 350 F.3d 1272; *see also McFarlane v. Sheridan Square Press*, 91 F.3d at 1515 ("[T]he publisher's failure to update the reader on the state of the controversy can hardly be taken as evidence that it published the book with actual malice."). Indeed, the D.C. Circuit has noted that refusal to retract a story can be indicative of a *lack of actual malice*, by showing the publisher's "continued belief in the story's accuracy." *Tavoulareas*, 817 F.2d at 771. Moreover, even assuming that the ADL article definitively established a singular, accepted meaning for the "OK sign," (which it did not), Roller's failure to retract would still not be evidence of "actual malice," because it had nothing to do with Roller's state of mind at the time she published the Tweets. *Kahl*, 856 F.3d at 118 ("The actual malice inquiry focuses on the defendant's state of mind at the time of publication.")

Fourth, even if Roller's interpretation had been somehow mistaken, Roller's Tweets simply "amounted to the adoption of one of a number of possible rational interpretations of a document"—*i.e.*, Plaintiff's photo published on Twitter—"that bristled with ambiguities," and, as such, could not have been made with actual malice. *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971). The D.C. Circuit has repeatedly reaffirmed that "when a writer is evaluating or giving an account of inherently ambiguous materials or subject matter, the First Amendment requires that the courts allow latitude for interpretation." *Moldea*, 22 F.3d at 315; *see Washington v. Smith*, 80

---

[31] This assumes that the same journalistic standards that may make it prudent to correct or update a published news story applies to an off-the-cuff expression of opinion in a tweet.

F.3d at 557 (plaintiff was required to establish that "no reasonable person could find that [the] statement … [was] a supportable interpretation of the underlying facts"). That court also recently held that "[a]n honest misinterpretation [of a document] does not amount to actual malice even if the publisher was negligent in failing to read the document carefully." *Jankovic*, 822 F.3d at 594.[32]

Finally, Plaintiff's conclusory and hyperbolic allegations that Roller is engaged in a "personal, political war on [her] ideological adversaries and grassroots competitors," and that these Tweets were part of a "malicious, malevolent" campaign to "spread[] racial hysteria and … smear her political opponents," also have no bearing on the actual malice inquiry.  Compl. at 2-3. Even if these far-fetched allegations were taken as true (which they are not), "ill-will does not establish actual malice, nor does a malevolent motive for publication." *Parsi*, 890 F. Supp. 2d at 81; *see also McFarlane v. Esquire*, 74 F.3d at 1307 ("The fact that a commentary is one sided and sets forth categorical accusations has no tendency to prove that the publisher believed it to be false.") (citation omitted); *Lohrenz*, 223 F. Supp. 2d at 48 (allegations that defendant's alleged "pre-existing agenda" against plaintiff was "not indicative of actual malice," and any argument to the contrary "may … be summarily rejected").

In sum, Plaintiff does not point to a single fact that would suggest that Roller had actual, subjective doubts about the accuracy of her characterization, let alone knew that the

---

[32] Plaintiff pleads in the alternative that, "[a]t a minimum, Defendant failed to exercise reasonable care when she published such a serious allegation against the Plaintiff."  Compl. ¶ 21. But even if Plaintiff were deemed a private figure (which her own allegations negate), under the circumstances, Roller's characterization of the Plaintiff's gesture as a "white power hand gesture" is wholly reasonable (and confirmed by the numerous articles referring to the gesture in similar terms, *see supra* notes 3-4), particularly given that the characterization appeared in a tweet, and not a formally published article.

characterization was false. As Plaintiff has not and cannot plead facts that would establish that

the Tweets at issue were published with actual malice, the Complaint must be dismissed.

## CONCLUSION

For all of the reasons set forth above, Defendant respectfully requests that the Court

dismiss Plaintiff's Complaint in its entirety with prejudice.[33]


Dated: October 23, 2017

Respectfully submitted,


/s/ *Laura R. Handman*
Laura R. Handman (DC Bar No. 444386)
Eric J. Feder (DC Bar No. 1048522)

DAVIS WRIGHT TREMAINE LLP

1919 Pennsylvania Avenue N.W., Suite 800
Washington, DC  20006-3401
(202) 973-4200
(202) 973-4499 (fax)
laurahandman@dwt.com
ericfeder@dwt.com

*Attorneys for Defendant Emma Roller*

---

[33] Amending the Complaint would be futile, since Plaintiff does not – and cannot – state a claim. This Court should therefore dismiss with prejudice. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile ... if the proposed claim would not survive a motion to dismiss.").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, I caused defendant Emma Roller's Motion to Dismiss and supporting Memorandum to be filed and served electronically via the Court's ECF system upon counsel of record.

Dated: October 23, 2017

/s/ *Laura R. Handman*
Laura R. Handman