**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CASSANDRA FAIRBANKS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EMMA ROLLER, an individual,<br><br>Defendant. | Civil Action No.: 1:17-cv-01052 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT .................................................................. 3

ARGUMENT ........................................................................................................................ 4

I. Standards Applicable: Liberal Construction in Favor of Plaintiff ........................................... 4

A. The Twin Lies Were Libel ........................................................................................ 4

1. The Jury Knows Exactly What "White Power" Means Just As the Lie About the Anti-Defamation League Is What the ADL Said It Was: False ................................... 5

B. The Twin Lies Were So Inflammatory, They Were Defamation Per Se ....................... 8

C. Plaintiff Sufficiently Pled Actual Malice: Circumstantial Evidence Abounds of the Defendant's Complete Reckless Disregard of the Truth and Actual Malevolence ............. 10

CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Ark. Pub. Emples. Ret. Sys. v. Harman Int'l Indus. Inc.*, 791 F.3d 90, 99-100 (D.C. Cir. 2015) ... 4

*Armstrong v. Thompson*, 80 A.3d 177 (D.C. 2013). ... 6

*Barrick Gold Corp. v. Lopehandia*, 2004 WL 1178529 (Ont. C.A. 2004). ... 8

*Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001) ... 5

*Buckley v. Littell*, 539 F.2d 882 (2nd Cir. 1976) ... 9

*Forte v. Jones,* No. 11-cv-0718, 2013 WL 1164929 at *6 (E.D. Cal. Mar. 20, 2013) ... 9

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) ... 10

*Herbert v. Lando*, 441 U.S. 153, 156 (1979) ... 11

*McFarlane v. Sheridan Square Press, Inc.* 91 F.3d 1501, 1510 (D.C. Cir. 1996) ... 11

*Messina v. Fontana*, 260 F. Supp. 2d 173, 176-177 (D.D.C. 2003) ... 4

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ... 6

*Moldea v. New York Times Co.*, 15 F.3d 1137, 1142 (D.C. Circ. 1994) ... 5

*S. Air Transp., Inc. v. Am. Broadcasting Co., Inc.* 877 F.2d 1010, 1014 (D.C. Cir. 1989) ... 4, 5

*St. Amant v. Thompson*, 390 U.S.727, 731-732 (1968) ... 11

*Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) (en banc) ... 10

*Wallace v. Skadden, Arps, Slate, Meagher, & Flon*, 715 A.2d 873, 878 (1998) ... 5

*White v. Fraternal Order of* Police, 285 U.S. App. D.C. 273 (D.C. Cir. 1990) ... 6

*Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 904 (2004) ... 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ... 4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CASSANDRA FAIRBANKS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EMMA ROLLER, an individual,<br><br>Defendant. | ) | Civil Action No.: 1:17-cv-01052 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant told two defamatory falsehoods about the Plaintiff: first, that the Plaintiff flashed a "white power" gesture from the media room at the White House; and second, that the Anti-Defamation league confirmed the gesture used by Plaintiff was a "white power" gesture. Defendant does not even deign to pretend what she said was true about plaintiff. Instead; Defendant claims she doesn't know what the term "white power" means, that nobody else has any idea what the term "white power"[1] means, and that white power is such an innocent, innocuous, ambiguous, ambivalent term, no jury could possible think "white power" gesture could have any possible defamatory meaning.

[1] Courts do not seem to have the same difficulty determining what "White Power" means, explicitly and implicitly. "here, the jury reasonably could infer from the evidence" racial animus based on "white supremacy" words. *People v. Lindberg*., 45 Cal. 4th 1 (2008) at 78.

Of note, Defendant pretends she never made the statement about the Anti-Defamation League, another complete inflammatory falsehood she cannot defend.

As the fall-back position, Defendant argues the malice prong of the defamation claim. In this defense, Defendant claims she couldn't possibly have intended to lie about the plaintiff, and could not have acted recklessly about the falsity of her statements. At this Rule 12 stage of the case, the Amended Complaint provides more than sufficient allegations that a juror could conclude the statements made were defamatory. The First Amendment is not a license to lie.

## ARGUMENT

### I. Standards Applicable: Liberal Construction in Favor of Plaintiff

Defendant seeks to have Plaintiff's First Amended Complaint dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim actionable for defamation. On a motion to dismiss under F.R.C.P. 12(b)(6), the court must assume the truth of all well-pleaded factual allegations in the complaint and draw all reasonable inferences from those allegations *in the plaintiff's favor*. *See Ark. Pub. Emples. Ret. Sys. v. Harman Int'l Indus. Inc.*, 791 F.3d 90, 99-100 (D.C. Cir. 2015). In defamation cases, that means any statement that could be defamatory suffices, even if other interpretations could apply. *See S. Air Transp., Inc. v. Am. Broadcasting Co., Inc.* 877 F.2d 1010, 1014 (D.C. Cir. 1989).

#### A. The Twin Falsehoods Were Libel

A plaintiff who is a public figure, or who is a limited-purpose public figure, establishes a claim for libel if the plaintiff can show (1) that the defendant made a defamatory statement concerning the plaintiff; (2) that the statement was published without privilege; (3) that the defendant published the statement with actual malice; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. *See Messina v. Fontana*, 260 F. Supp. 2d 173, 176-177 (D.D.C. 2003); *see also*

*Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001). If a defendant seeks to dismiss a defamation claim on the ground that the statement was not defamatory, the Court is to assess whether the challenged statement could reasonably be interpreted to be defamatory as the plaintiff alleged. At this stage, the question is not whether third-parties actually understood the statement as defamatory, but whether third-parties could have. *See Moldea v. New York Times Co.*, 15 F.3d 1137, 1142 (D.C. Circ. 1994) ("[T]he defamatory meaning inquiry focuses only on whether a reasonable reader could understand a statement as tending to injure a plaintiff's reputation.") A court that concludes that a challenged statement could reasonably be understood as defamatory must permit the defamation claim to move past the pleading for dismissal even if the court concludes that the challenged statement could so be reasonably understood as non-defamatory. *See S. Air Transp., Inc. v. Am. Broadcasting Co., Inc.* 877 F.2d 1010, 1014 (D.C. Cir. 1989). If it appears that the challenged statement is at least capable of a defamatory meaning, then whether the statement is defamatory and false are questions of fact to be resolved by the jury. *Wallace v. Skadden, Arps, Slate, Meagher, & Flon*, 715 A.2d 873, 878 (1998).

Defendant asserts two arguments against plaintiff's pleading of its defamation claim: (1) that the defamatory statements are mere "opinion" and therefore non-actionable, and (2) that plaintiff is a First Amendment "public figure" who did not sufficiently plead "actual malice" to successfully pleads its claim. Both arguments fail.

**1. The Jury Can Determine What "White Power" Means Just As the Falsehood About the Anti-Defamation League Is What the ADL Said It Was: False**

A defamatory statement is no less of libel even if couched in terms of an "opinion." The Supreme Court made that clear nearly three decades ago. *See Milkovich v. Lorain Journal Co.*,

497 U.S. 1 (1990); *Armstrong v. Thompson,* 80 A.3d 177 (D.C. 2013). In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), the Supreme Court rejected a bright-line rule stating it never intended "to create a wholesale defamation exemption for anything that might be labeled 'opinion.'" *Id.* at 18. The Court explained that "simply couching such statements in terms of opinion does not dispel [the false, defamatory] implications" because a speaker may still imply "a knowledge of facts which lead to the [defamatory] conclusion." *Id*. at 19. (see also, *White v. Fraternal Order of* Police, 285 U.S. App. D.C. 273 (D.C. Cir. 1990) ("even with a per se opinion, the question is whether the person has made an assertion that can reasonably be understood as implying provable facts." In *Milkovich*, the Court determined accusing someone else of lying was defamation, since it is the kind of issue jurors and judges often determine. In the same vein, racial animus is a question jurors and judges determine every day across the country, and an allegation of it is a question a jury can answer just like the Anti-Defamation League answered here. The statements are verifiably false, and were knowingly, verifiably false at the time.

First, Defendant's argument that the defamatory statement is "indefinite and ambiguous" holds no weight. If someone called us a "white power gesture" advocate, would any of us be confused as to what it means? "White power gesture" is a definitive statement. As the ADL quickly concluded about the defendant's claim: it was false.

Second, Defendant's first Twitter message stating plaintiff was "doing a 'white power' gesture in the White House" was followed by a reference link to prove what the ADL was considering to be a white power gesture. This is not mere opinion or hyperbole. Unlike in *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 85 (D.D.C. 2012) (in which the Court found that there were no citations in the defendant journalist's defamatory paragraph so that it was clear that the defendant was making a logical argument not a factual assertion), the Defendant here followed her original

Tweet with a citation to the ADL website. Defendant attempted to bolster her argument that Plaintiff was "doing a white power hand gesture" by linking to the ADL website, demonstrating the accuracy of her statement. However, when the ADL issued a statement that "the one handed 'OK' symbol alone is not a signal indicating white supremacy"[2] Defendant tried to claim that the symbol is so ambiguous, it is unable to be part of a defamation action.

Third, Defendant ignores the fact that the identity of the speaker influences the reader's interpretation of a statement and whether a statement seeks to assert the truth. "An accusation that, if made by a layperson, might constitute opinion may be understood to be based on fact if made by someone with specialized knowledge of the industry. *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 904 (2004). Here, Defendant did not make the statement anonymously or separate from her position as a senior politics reporter. Her Tweet was picked up by major news outlets and was shared, not as opinion, but as a fact stated by a senior politics reporter.[3]

Fourth, and finally, there is no magical Twitter exception to lies and libel. Defendant tries to argue that Twitter is a "forum well known for the pithy exchange of opinions," (Motion at 17); that argument ignores the reach of the internet. Defamation over the Internet differs significantly from defamation in other mediums simply because of the vast audience and almost instantaneous exposure. "The mode and extent of publication is particularly relevant in the Internet context and

[2] *No, the 'OK' Gesture Is Not a Hate Symbol*, ADL Blog (May 1, 2017), https://www.adl.org/blog/no-the-ok-gesture-is-not-a-hate-symbol.

[3] Emily Shugerman, The Independent. *Two members of alt-right accused of making white supremacist hand signs in White House after receiving press pass*, The Independent (April 29, 2017), http://www.independent.co.uk/news/world/americas/us-politics/white-power-hand-symbol-cassandra-fairbanks-mike-cernovich-alt-right-white-house-a7709446.html.

must be considered carefully...Its impersonal and anonymous nature can create a greater risk that defamatory remarks are believed." *Barrick Gold Corp. v. Lopehandia*, 2004 WL 1178529 (Ont. C.A. 2004). Twitter's Annual Report states "[T]he reach of Twitter content is not limited to our logged-in users on the Twitter platform, but rather extends to a larger global audience. The public nature of the Twitter platform allows us and others to extend the reach of Twitter content beyond our properties."[4] Although Defendant tries to claim that Twitter is "a forum well known for the pithy exchange of ideas" (Motion at 17), Twitter itself claims that "many of the world's most trusted media outlets, including the BBC, CNN...regularly use Twitter as a platform for content distribution.[5] In fact, it has become the home for official statements of the President.[6] Again, Twitter itself supports the idea that Twitter goes beyond a forum for quick, off-the-cuff statements of opinion.

**B. The Twin Falsehoods are So Inflammatory, They are Defamation Per Se.**

The Defendant told two defamatory falsehoods; she only talks about the first of the two in her Motion to Dismiss. The Defendant claimed the Plaintiff flashed a "white power gesture" from the White House media room while at the White House on invitation as a journalist, on a media credential. The second lie, told in connection to the first lie and to affirm the first lie, was that the Anti-Defamation League specifically identified the gesture used by the Plaintiff was a "white

---

[4] Twitter. (2017). *Form 10-K 2017*. Retrieved from https://investor.twitterinc.com/secfiling.cfm?filingID=1564590-17-2584&CIK=1418091.

[5] *Id.*

[6] Andrew Blake, *DOJ: Trump's tweets are 'official statements of the President'*, Washington Times (November 14, 2017), https://www.washingtontimes.com/news/2017/nov/14/doj-donald-trump-tweets-are-official-statements-of/.

power" gesture. We know whether both claims are too "ambiguous" to ascertain their truth: the ADL itself called both "false."

What did Defendant do when her falsehoods were exposed, even though they had spread around the world in other publications relying upon her reputation to spread them? Did she retract? Did she apologize? No.

Like the ADL, a jury can render the same decision: the statements of the Defendant were false. Indeed, jurors and judges are asked to make that decision every day in courts—whether a person has a "white power" or white "supremacist" ideology; they decide the issue of racial animus in discriminatory intent cases, in hate crime cases, and many others where the issue of racial animus of a particular kind of a question of fact for the jury. Additionally, the very specific nature of both claims—that the gesture used by the Plaintiff was a "white power" gesture; and that the ADL identified it as a white power gesture on their website—were both factual claims clearly capable of defamatory meaning, the relevant standard at this stage of pleading.

The “white power gesture” claim was defamatory per se. Alleging specific racist beliefs and use of specific racist gestures – like calling someone KKK -- is actionable. *Forte v. Jones*, No. 11-cv-0718, 2013 WL 1164929 at *6 (E.D. Cal. Mar. 20, 2013). Any jury can readily perceive such an accusation and innuendo as a claim “susceptible to proof or disproof of falsity.” *Buckley v. Littell*, 539 F.2d 882 (2nd Cir. 1976). The context of these accusations by the Defendant

reinforce that, as she referenced this in the context of accusing the plaintiff of white nationalism,[7] comprised of new neo-Nazis.[8] [9] White Power was a term coined by George Lincoln Rockwell, the founder of the American Nazi Party[10]. Further, the news media, including the international news, understood the Tweet to be a reflection of white supremacist values.[11]

**C. Plaintiff Sufficiently Pled Actual Malice: Circumstantial Evidence Abounds of the Defendant's Complete Reckless Disregard of the Truth and Actual Malevolence**

Courts allow plaintiffs to prove actual malice by relying on circumstantial evidence, as it is unlikely that one making a defamatory statement would freely admit their wrongful intentions. *See Tavoulareas v. Piro,* 817 F.2d 762, 795 (D.C. Cir. 1987) (en banc) ("[A] plaintiff may prove the defendant's subjective state of mind through the cumulation of circumstantial evidence, as well as through direct evidence.") *See also Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989). For instance, awareness of probable falsity can be found if the defendant "entertained serious doubts as to the truth of his publication" or based the story on some other source that the defendant had "obvious reasons to doubt the veracity of the informant or the

---

[7] Liam Stack, *Alt-Right, Alt-Left, Antifa: A Glossary of Extremist Language*, The New York Times (August 15, 2017), https://www.nytimes.com/2017/08/15/us/politics/alt-left-alt-right-glossary.html.

[8] Annalisa Merelli, *What it means to be an American Nazi in 2017*, Quartz (August 16, 2017), https://qz.com/1053370/what-it-means-to-be-an-american-nazi-in-2017

[9] Annalisa Merelli, *A taxonomy of American far-right hate groups*, Quartz (August 20, 2017), https://qz.com/1057835/a-taxonomy-of-american-far-right-hate-groups/

[10] George Lincoln Rockwell, *White Power* (Sandycroft Publications 2016). *See also* Anis Shivani, *What is 'white supremacy'? A brief history of a term and a movement, that continues to haunt America*, Salon (April 23, 2017), https://www.salon.com/2017/04/23/what-is-white-supremacy-a-brief-history-of-a-term-and-a-movement-that-continues-to-haunt-america/.

[11] *Two Alt-right Members Accused Of Flashing White Power Sign at White House*, Haaretz (April 30, 2017), https://www.haaretz.com/us-news/1.786566.

accuracy of his reports." *St. Amant v. Thompson*, 390 U.S.727, 731-732 (1968); see also *Herbert v. Lando*, 441 U.S. 153, 156 (1979). "If a defendant has reason to doubt the veracity of its source, then its failure to examine evidence within easy reach or to make obvious contacts in an effort to confirm a story would be evidence of its reckless disregard." *McFarlane v. Sheridan Square Press, Inc.* 91 F.3d 1501, 1510 (D.C. Cir. 1996). A deliberate decision to avoid information that might prove the story false demonstrates reckless disregard. *Connaughton*, 491 U.S. at 692 ("it was likely that the newspaper's inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of charges..."). Here, Defendant, a journalist, did not perform simple research, but rather attacked the character of, and falsely accused, the Plaintiff, based on nothing other than faulty information. Information that could have been proven false by a quick online search.[12] The circumstances surrounding (1) Defendant's knowledge that the gesture was not in fact a white power gesture; (2) Defendant's ignorance to perform at minimum, any sort of due diligence that would demonstrate ethical reporting; and, (3) Defendant's motive to make out a plausible claim of malice that Plaintiff, who is entitled to all favorable inferences, must be allowed to attempt to prove.

That alone suffices, but more is present here: both specific intent to spread smears about competitor journalists politically disfavored by the defendant and a complete failure to issue a single correction or retraction, the latter recently recited in a district court's decision in *Palin vs. New York Times*, as important in assessing actual malice.

[12] "Memes and misinformation spread more rapidly online than anywhere else. We must apply the same standards of verification as we would to any other source." Jim Romenesko, *Bloomberg policy: 'Ask questions first. Tweet later'*, Poynter (April 27, 2011), https://www.poynter.org/2011/bloomberg-policy-ask-questions-first-tweet-later/129734/.

The defendant bragged about her intention to spread fake news in order to advance her political agenda, continues a campaign of smears before and after smearing the plaintiff, and her complete absence of a correction or retraction or apology is the best evidence of her malevolent purpose and malignant intent in spreading these inflammatory, reputation-destroying lies about the plaintiff.

She lied. She knew she lied. She refused to apologize or correct her lie. She caused real injury with her lie. She keeps lying. And now she wants this court to immunize her for her lies. Lies intended to suppress, censor and shame the speech rights of the plaintiff. That is what neither the First Amendment nor federal rules of procedure permit or prescribe. Being a professional journalist means a higher standard of truth-telling, not a license to lie. The law has always so held. Let the law here so reflect.

## CONCLUSION

For the foregoing reasons, Plaintiff requests the Court to deny Defendant's Motion to Dismiss.

DATED: December 6, 2017

Respectfully submitted,
Cassandra Fairbanks
By Counsel

/s/ Robert E. Barnes
Robert E. Barnes, Esq.
BARNES LAW
601 South Figueroa Street, Suite 4050
Los Angeles, California 90017
Telephone:  (310) 510-6211
Facsimile:   (310) 510-6225
E-mail:   robertbarnes@barneslawllp.com

/s/ Daniel D. Mauler
Daniel D. Mauler (D.C. Bar No. 977757)
REDMON, PEYTON & BRASWELL, LLP
510 King Street, Suite 301
Alexandria, Virginia 22314

703-684-2000 (Tel)
703-684-5109 (Fax)
dmauler@rpb-law.com

*Counsel for Plaintiff Cassandra Fairbanks*

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December 2017, I caused a true and correct copy of the foregoing motion to be served via the Court's ECF system upon counsel for the Defendant.

/s/
Daniel D. Mauler
Daniel D. Mauler (D.C. Bar No. 977757)
REDMON, PEYTON & BRASWELL, LLP
510 King Street, Suite 301
Alexandria, Virginia 22314
703-684-2000 (Tel)
703-684-5109 (Fax)
dmauler@rpb-law.com

*Counsel for Plaintiff Cassandra Fairbanks*