**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CASSANDRA FAIRBANKS, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No.: 1:17-cv-01052 |
| EMMA ROLLER, an individual, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT ............................................................. 3

ARGUMENT ........................................................................................................................... 5

    I.    It Is Established Law That The D.C. Anti-SLAPP Act Does Not Apply to This Court ............. 5

    II.    The Anti-SLAPP Act Does Not Apply Here Because Plaintiff's Claim Does Not Arise From an Act in Furtherance of the Right of Advocacy on Issues of Public Interest ............................ 7

    III.    For Any Constitution-Conforming Anti-Slapp Law to Apply Only Requires Plaintiff Meet Rule 12, and Plaintiff's Pleading Meets That Standard ............................................................. 9

    IV.    The D.C. Anti-SLAPP Act is Unconstitutional .................................................................. 11

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Abbas v. Foreign Policy Group, LLC,* 975 F. Supp. 2d 1 (D.D.C. Sept. 27, 2013), aff'd 783 F.3d 1328 (D.C. Cir. 2015) ............................................................................................................... 3

*Beeton v. District of Columbia*, 779 A.2d 918 (D.C. 2001) ........................................................ 7

*Competitive Enterprise Institute v. Mann*, 150 A.3d 1213 (D.C. 2016) ........................................ 4

*Forras v. Rauf*, 39 F. Supp. 3d 45 (D.C.D.C. 2014) ...................................................................... 6

*Jankovic v. International Crisis Group*, 494 F.3d 1080, (D.C. 2007) ........................................... 7

Lehan v. Fox Television Stations, Inc., No. 2011-CA-004592-B, 2011 D.C. Super. LEXIS 14 (D.C. Super. Ct. Nov. 30, 2011); ............................................................................................ 6

*Messina v. Fontana*, 260 F. Supp. 2d 173 (D.D.C. 2003) ............................................................ 7

*Moss v. Stockard*, 580 A.2d 1011 (D.C. 1990) ............................................................................. 7

*Sherrod v. Breitbart*, 843 F.Supp.2d 83 (D.D.C. 2012) ................................................................ 3

*The Saint Consulting Group, Inc. v. Litz,* 2010 WL 2836792 (D.Mass. July 19, 2010) ................. 3

*Wallace v. Skadden, Arps, Slate, Meagher, & Flon*, 715 A.2d 873 (1998) ................................... 7

**Statutes**

D.C. Code §16-5501, *et seq.* (D.C. Anti-SLAPP Act of 2010) ...................................................... 7

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CASSANDRA FAIRBANKS, an individual, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EMMA ROLLER, an individual, )<br>)<br>Defendant. )<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 1:17-cv-01052 |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant claims the two lies she told about Plaintiff do not matter, that she should suffer no consequence, and the lies can never be legally remedied. Instead, Defendant claims these twinned lies—told as part of threaded tweets to the world, relied upon, recited, and repeated around the world to more than 30 million people, without any retraction or apology, ever—are not only immune from liability, but Plaintiff merely seeking remedy warrants an attorneys' fee award against Plaintiff as reward for Defendant's defamatory lies. The law does not so hold.

First, the anti-SLAPP statute of the District of Columbia does not apply in federal court. Defendant's attempt to circumvent this controlling precedent from the Court of Appeals of this Circuit is unavailing, especially as the constitutionality of the anti-SLAPP statute would be brought into further question thereby. Second, no anti-SLAPP claim could be brought here, as Defendant admits its interpretation of the anti-SLAPP statute requires no legal standards different than Rule 12 at this pleading stage of the case. Third, Defendant cannot meet its obligations under Rule 12 at this pleading stage. Defendant's two lies are each independently and collectively actionable libel

under the laws of the District and permitted by the First Amendment to the United States Constitution. The First Amendment is not a license to lie. The First Amendment is not a liberty reserved to the privileged profession of pedigreed journalists. The First Amendment is not an asset owned by the media elite. The First Amendment is owned by all Americans. The actions of Defendant were intended to suppress, censor and shame the speech of a journalist Defendant disliked; that is not what the First Amendment, now or ever, immunized. Contrary to the Defendant's assertions, the speech of the plaintiff is what the First Amendment is intended to protect from the malicious and malevolent lies about her by high-profile journalists.

Defendant's Special Motion to Dismiss Pursuant to the D.C. Anti-SLAPP Act (the "Motion") attempts to frame her defamatory and false statement as one side of a "public policy debate." This labored analysis requires a suspension of disbelief as if Plaintiff and Defendant had been engaged in an ongoing political debate, with each side expressing their respective opinions on a public policy issue. That is not what happened here. There was no debate; there was no back and forth; there were no opinions stated. Defendant stated as a fact that Plaintiff made a hand gesture supporting white supremacy in the White House, and she did it as journalist publishing a fact to her tens of thousands of readers. Contrary to Defendant's assertions, the First Amendment does not protect a journalist who decides to publicly publish the worst kind of falsehood about another journalist. Defendant's lie was not public participation –it was malicious character assassination.

As explained more fully below, Defendant's Motion must be denied for the following reasons: 1) it is established law that The D.C. Anti-SLAPP Act (the "Act") does not apply to this Court; and 2) assuming for the sake of argument that the Act did apply to this Court, it would not apply to this case because Plaintiff's claim does not arise from an act in furtherance of the right of

advocacy on issues of public interest. Defendant used her position as a journalist to falsely accuse Plaintiff of supporting one of the most abhorrent ideologies imaginable, and she did it with the goal of destroying Plaintiff's reputation and the credibility of any future work published by the Plaintiff. Now, she invokes a law that does not apply to this Court in order to prevent Plaintiff from ever redeeming herself in the public sphere. Accordingly, Defendant's Motion must be denied.

## **ARGUMENT**

### I.     **It Is Established Law That The D.C. Anti-SLAPP Act Does Not Apply to This Court**

This Court has made clear on multiple occasions that the Act does not apply in this Court, yet Defendant asks this Court to ignore prior precedent for the admitted purpose of allowing Defendant's lawyers to collect attorney fees. It is indisputable that the established law in this Court is that the Act does not apply in federal diversity cases. *Abbas v. Foreign Policy Group, LLC,* 975 F. Supp. 2d 1 (D.D.C. Sept. 27, 2013), aff'd 783 F.3d 1328 (D.C. Cir. 2015).  The Erie doctrine requires federal courts sitting in diversity to apply state substantive law and federal procedural law.  *Sherrod v. Breitbart*, 843 F.Supp.2d 83, 85 (D.D.C. 2012).  A large number of courts, including D.C. courts have held anti-SLAPP statutes to be procedural in nature, and therefore, not applicable in federal court.  *See Sherrod,* supra, at 85; *see also The Saint Consulting Group, Inc. v. Litz,* 2010 WL 2836792 (D.Mass. July 19, 2010).

The court in *Abbas* made clear that because the Act imposes a higher burden on plaintiffs than the Federal Rules of Civil Procedure 12 and 56, it should not be applied in federal cases.

> "Under the Federal Rules, a plaintiff is generally entitled to trial if he or she meets the Rules 12 and 56 standards to overcome a motion to dismiss or for summary judgment.  But the DC Anti-SLAPP Act nullifies that entitlement in certain cases. Under the D.C. Anti-SLAPP Act, the plaintiff is not able to get to trial just be

> meeting those Rule 12 and 56 standards.  The D.C. Anti-SLAPP Act, in other words, conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial...In short, unlike the D.C. Anti-SLAPP Act, the Federal Rules do not require a plaintiff to show a likelihood of success on the merits in order to avoid pre-trial dismissal.  Under Shady Grove, therefore, we may not apply the D.C. Anti-SLAPP Act's special motion to dismiss provision."
> *Abbas*, 738 F.3d at 1334.

Defendant argues that because the D.C. Court of Appeals in *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213 (D.C. 2016) held that the burdens imposed by the Federal Rules and the anti-SLAPP statute are the same, this Court should now choose to apply the Act to federal cases sitting in diversity before this Court. However, the D.C. Court of Appeals in *Mann* did not hold that the Act should apply to federal cases sitting in diversity, but merely suggested that its decision might factor into future analysis of the dicta of *Abbas*. When this Court was most recently given the opportunity to apply the Act following the *Mann* decision, this Court declined to apply the Act and explicitly stated that *Abbas* was the law which bound the Court.   *Deripaska v. Associated Press* Case No. 1:17-cv-00913-ESH Memorandum Opinion.  "Discerning the content of state law requires deferring 'to the most recent decisions of the state's highest court, and when interpreting and applying D.C. law, courts fulfill this obligation by looking at the published opinions of the D.C. Court of Appeals.'"  Memorandum Opinion at 2, citing *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944); *Rogers v. Ingersoll-Rand Co.*, 144 F.3d 841, 843 (D.C. Cir. 1998).  This Court stated, "[B]ut of course, district courts also remain bound by the decisions of the D.C. Circuit," concluding that, "the law at this time that binds this Court is the D.C. Circuit's opinion in *Abbas*." Memorandum Opinion at 2.  Defendant requests that this Court upend established precedent, and does so for the stated purpose of allowing her attorneys to seek fees. Doing so would ignore binding precedent and run contrary to the public policy goals that the Act was meant to serve. Accordingly, Defendant's Motion must be denied.

II.     **The Anti-SLAPP Act Does Not Apply Here Because Plaintiff's Claim Does Not Arise From an Act in Furtherance of the Right of Advocacy on Issues of Public Interest**

Defendant argues that her defamatory statement arose from an act in furtherance of the right of advocacy on issues of public interest, and in support of her claim she puts forward two incredibly dubious propositions: 1) that the term "white power" is undefinable in the context of political debate; and 2) that the "OK" hand gesture is an ambiguous symbol. To further make light of what was a direct and malicious lie, Defendant characterizes her statement, "[J]ust two people doing a white power hand gesture in the White House", as somehow speaking directly to Plaintiff's role as a grassroots journalist. Defendant's Motion to Dismiss at 3-4.  Defendant's words speak for themselves, and they have verifiable, definable meaning. When one is called a white supremacist, there is no confusion over what beliefs one is being accused of holding, and the stigma that attaches when one is associated with those beliefs can create a real and lasting damage.[1] Likewise, the contention that one of the country's most universally recognized hand gestures, the "OK" gesture, could be rationally interpreted as a white power hand gesture is contrary to common sense. Defendant's defamatory statement was made as presenting a fact, not an opinion, and therefore it is clear that the Act has no place in this case.

---

[1]   Nick Roll, *White Supremacist TA*, Inside Higher Ed (October 4, 2017), https://www.insidehighered.com/news/2017/10/04/virginia-tech-faces-accusations-employing-white-supremacist.  *See also* Naomi LaChance, *More Nazis Are Getting Identified And Fired After Charlottesville*, Huffington Post (August 17, 2017), https://www.huffingtonpost.com/entry/more-nazis-are-getting-identified-and-fired-after-charlottesville_us_599477dbe4b0eef7ad2c0318.  Katie Reilly, *Student Who Attended Charlottesville White Supremacist Rally Leaves Boston University After Backlash*, Time (August 17, 2017), http://time.com/4905939/nicholas-fuentes-white-supremacist-rally-charlottesville/.

District of Columbia's Anti-SLAPP Act of 2010 was passed as a response to a legal trend of lawsuits being used "as a means to muzzle speech or efforts to petition the government on interests of public interest" that are "often without merit, but achieve their filer's intention of punishing or preventing opposing points of view, resulting in a chilling effect on the exercise of constitutionally protected rights."  Committee On Public Safety and the Judiciary, Council of D.C. Rep on Bill 180893, "Anti-SLAPP Act of 2010," at 1 (Nov. 18, 2010).  The Anti-SLAPP Act was intended to apply when the "goal of the litigation is not to win the lawsuit but punish the opponent and intimidate them into silence." *Id.* at 4.

This is not a case in which policy debate is at issue.  It cannot honestly be said that Defendant is involved in the same type of speech that has been given protection under the anti-SLAPP Act, such as cases in which parties are attempting to hinder or silence community activists. *See* e.g. *Forras v. Rauf*, 39 F. Supp. 3d 45 (D.C.D.C. 2014); *Lehan v. Fox Television Stations, Inc.,* No. 2011-CA-004592-B, 2011 D.C. Super. LEXIS 14 (D.C. Super. Ct. Nov. 30, 2011); *Abbas v. Foreign Policy Group, LLC,* 975 F. Supp. 2d 1 (D.D.C. Sept. 27, 2013), aff'd 783 F.3d 1328 (D.C. Cir. 2015).

Defendant's claim that the statement at issue deals with a point of public concern is disingenuous at best. Defendant stated a lie about the Plaintiff, and she did it as a statement of fact. There was no policy position or opinion on current events in Defendant's statement. There was no contribution to the public debate. Again, one only need to look to the words themselves as proof, "Just two people doing a white power hand gesture in the White House." Defendant issued a defamatory statement that was a personal attack, and she is now, after the fact, trying to couch it as a public concern.

### III.       For Any Constitution-Conforming Anti-Slapp Law to Apply Only Requires Plaintiff Meet Rule 12, and Plaintiff's Pleading Meets That Standard

As the defendant concedes, the only way this Circuit will ever allow the D.C. Anti-Slapp provision to apply is if it is indistinguishable from Rule 12's standards. For reasons articulated by below, any other application of their anti-slapp statute would violate the Seventh Amendment to the United States Constitution.

A plaintiff who is a public figure, or who is a limited-purpose public figure establishes a claim for liable if the plaintiff can show (1) that the defendant made a defamatory statement concerning the plaintiff; (2) that the statement was published without privilege; (3) that the defendant published the statement with actual malice; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. *See Messina v. Fontana*, 260 F. Supp. 2d 173, 176-177 (D.D.C. 2003); see also *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001). A defamatory statement is one in which it tends to "injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Jankovic v. International Crisis Group*, 494 F.3d 1080, 1091(D.C. 2007) (citing *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990). If it appears that the challenged statement is at least capable of a defamatory meaning, then whether the statement is defamatory and false are questions of fact to be resolved by the jury. *Wallace v. Skadden, Arps, Slate, Meagher, & Flon*, 715 A.2d 873, 878 (1998).

For the reasons set forth in Plaintiff's Motion To Dismiss Memo, Plaintiff can meet its burden by showing the claim would be likely to succeed on its merits.

The defendant told two lies; she only talks about the first of the two. The defendant claimed the plaintiff flashed a "white power gesture" from the White House media room while there as a

journalist on a media credential. The second lie, told in connection to the first lie and to affirm the first lie, was that the Anti-Defamation League specifically identified the gesture used by the plaintiff as a "white power" gesture. We know whether both claims are too "ambiguous" to ascertain their truth: the ADL itself called both "false." What did defendant do when caught lying about plaintiff, knowing her lies spread around the world in other publications relying upon her reputation to spread them? Retract? Nope. Apologize? Nope. She went on to insinuate a GOP congressman shot at a softball game had it coming, using the same kind of defamatory innuendo she first applied here. Indeed, she went even further here: admitting in comparable contexts she believes in spreading fake news about people in the "higher" cause of "justice."

Like the ADL, a jury can quickly render the same decision: the statements of the defendant were false. Indeed, jurors and judges are asked to the make that decision every day in courts—whether a person has a "white power" or white "supremacist" ideology; they decide the issue of racial animus in discriminatory intent cases, in hate crime cases, and many others where the issue of racial animus of a particular kind of a question of fact for the jury. Additionally, the very specific nature of both claims—that the gesture used by the plaintiff was a "white power" gesture; and that the ADL identified it as a white power gesture on their website—were both factual claims clearly capable of defamatory meaning, the relevant standard at this stage of pleading.

First, Defendant's statement of "white power gesture" was defamatory in nature. Defendant accused Plaintiff of being part of a white nationalist organization, which is actionable defamation.  See *Forte v. Jones*, No. 11-cv-0718, 2013 WL 1164929 at *6.  Moreover, despite Defendant's insistence that such an allegation is not verifiable, "such allegations of membership or well-defined political affiliations are readily perceivable as allegations of fact susceptible to proof or disproof of falsity."  *Buckley v. Littell*, 539 F.2d 882, 894 (2nd Cir. 1976).  Here,

Defendant goes beyond the broad insult of "racist" to suggest Plaintiff's affiliation with a group that such membership results in great societal repercussions (see footnote 1).

Additionally, the defamatory statement was made with actual malice. Defendant recklessly disregarded whether or not the gesture was in fact a "white power gesture." Rather than making any attempt to adhere to norms of journalistic integrity, Defendant accused Plaintiff, then Further, it is clear that while motive does not itself determine actual malice, an improper motive may be considered "under some circumstances." *Tavoulareas v. Piro*, 817 F.2d 762, 795, 796 (D.C. Cir. 1987) (en banc). Here, it is clear that Defendant's hatred for Plaintiff's political beliefs and particular brand of journalism caused Defendant to lash out. At no point was the First Amendment intended to act as a shield for journalists with a global platform to hurl damaging, personal insults under the guise of "free speech."

### IV.    The D.C. Anti-SLAPP Act is Unconstitutional

To pass constitutional muster, the Act must be "consist[ent] with the letter and spirit of the constitution" and, specifically, the Seventh Amendment. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2579 (June 28, 2012) (quoting *McCulloch v. Maryland*, 4 Wheat. 316, 405, 4 L. Ed. 579 (1819)). Upon reviewing the text of the Act, it is evident that it creates an unconstitutional restriction of the right to a jury trial and inconsistent with the language and spirit of the Seventh Amendment. In fact, at least one other state supreme court has already held that its state's anti-SLAPP Act is unconstitutional because it required the judge to weigh competing evidence in a way that conflicted with the Seventh Amendment right to a jury trial. *See Davis v. Cox* 183 Wash.2d 269, 294 (2015).

Under the Act, if "a party filing a special motion to dismiss . . . makes a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public

interest, then the motion shall be granted unless the responding party demonstrates that the claim is likely to succeed on the merits. . . ." D.C. Code § 16-502. That is, the Court must make determinations of disputed issues of material fact, weigh evidence, and determine whether a plaintiff's claims are "likely to succeed on the merits." If, after weighing the evidence, the Court determines a plaintiff cannot meet this burden, the Court must grant the motion to dismiss. Such detailed and extensive fact-finding, and determination of disputed issues of fact, without the involvement of the jury, is in direct conflict with the language and spirit of the Seventh Amendment. "The Supreme Court has made it quite clear that Rule 56 sets the outer boundary for dismissing claims on the merits based upon a pretrial evaluation of the evidence; to go further infringes upon the Seventh Amendment right to a jury trial." *3M Co.v. Boutler*, No. 11-cv-1527, 2012 WL 5245458, * 1 (D.D.C. October 24, 2012). If the Court finds that the Act is applicable to this case despite the prior precedent of this Court, the Court should not apply the Act because it is unconstitutional. As scholars forecast over the past half-decade, courts in Washington, Minnesota and now possibly Massachusetts (pending before the First Circuit) have determined provisions like the D.C. Anti-Slapp provisions violate constitutional rights of the plaintiff if applied as written.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant's Motion to Dismiss Under the District of Columbia's Anti-SLAPP Act should be denied.


DATED: December 6, 2017                              Respectfully submitted,
                                                     Cassandra Fairbanks
                                                     By Counsel

                                                     /s/ Robert E. Barnes
                                                     Robert E. Barnes, Esq.
                                                     BARNES LAW
                                                     601 South Figueroa Street, Suite 4050
                                                     Los Angeles, California 90017

Telephone:  (310) 510-6211
Facsimile:   (310) 510-6225
E-mail:   robertbarnes@barneslawllp.com

/s/ Daniel D. Mauler
Daniel D. Mauler (D.C. Bar No. 977757)
REDMON, PEYTON & BRASWELL, LLP
510 King Street, Suite 301
Alexandria, Virginia 22314
703-684-2000 (Tel)
703-684-5109 (Fax)
dmauler@rpb-law.com

*Counsel for Plaintiff Cassandra Fairbanks*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December 2017, I caused a true and correct copy of the foregoing motion to be served via the Court's ECF system upon counsel for the Defendant.


/s/ Robert E. Barnes
Robert E. Barnes