**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CASSANDRA FAIRBANKS, an individual,** | |
| **Plaintiff**, | Civil Action No. 1:17-cv-01052-TNM |
| **v.** | |
| **EMMA ROLLER, an individual,** | ORAL HEARING REQUESTED |
| **Defendant**. | |

**DEFENDANT EMMA ROLLER'S REPLY MEMORANDUM IN FURTHER SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Laura R. Handman (DC Bar No. 444386)
Eric J. Feder (DC Bar No. 1048522)

DAVIS WRIGHT TREMAINE LLP

1919 Pennsylvania Avenue, N.W., Suite 800
Washington, DC  20006-3401
(202) 973-4200
(202) 973-4499 (fax)
laurahandman@dwt.com
ericfeder@dwt.com

*Attorneys for Defendant Emma Roller*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ...............................................................................................................................3

I.     COURTS ROUTINELY DISMISS LIBEL CLAIMS EARLY, ESPECIALLY IN
THE CONTEXT OF CORE POLITICAL SPEECH...........................................................3

II.     ROLLER'S TWEETS CONVEY NON-ACTIONABLE EXPRESSIONS OF HER
POLITICAL OPINION ......................................................................................................6

      A.      Use of Charged Rhetoric in the Course of Political Debate Cannot Be the
Basis of a Libel Claim................................................................................................6

      B.      Roller's Tweets Do Not Say or Imply What Plaintiff Claims They Say ................9

      C.      The Context and Tone of the Tweets Makes Clear That Roller Was Offering
Her Subjective Interpretation of Plaintiff's Photograph .........................................12

III.    PLAINTIFF HAS NOT ALLEGED A SINGLE FACT THAT WOULD
PLAUSIBLY ESTABLISH ACTUAL MALICE ............................................................15

CONCLUSION.............................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp., LLC*,
   783 F.3d 1328 (D.C. Cir. 2015) ...................................................................................4

*Arizona Free Enter. Club's Freedom Club PAC v. Bennett*,
   564 U.S. 721 (2011) ......................................................................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................3, 15

*BEG Invs., LLC v. Alberti*,
   85 F. Supp. 3d 13 (D.D.C. 2015) ...............................................................................19

*Bentkowski v. Scene Magazine*,
   637 F.3d 689 (6th Cir. 2011) ......................................................................................14

*Benz v. Washington Newspaper Publ'g Co.*,
   No. 05-cv-1760, 2006 WL 2844896 (D.D.C. Sept. 29, 2006) .....................................9

*Biospherics, Inc. v. Forbes, Inc.*,
   151 F.3d 180 (4th Cir. 1998) ......................................................................................14

*Buckley v. Littell*,
   539 F.2d 882 (2d Cir. 1976) ..............................................................................7, 8, 10

*Carpenter v. King*,
   792 F. Supp. 2d 29 (D.D.C. 2011), *aff'd*, 473 F. App'x 4 (D.C. Cir. 2012) ...............3

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ......................................................................................................5

*Coles v. Washington Free Weekly, Inc.*,
   881 F. Supp. 26 (D.D.C. 1995), *aff'd*, 88 F.3d 1278 (D.C. Cir. 1996) .......................4

*Deripaska v. Associated Press*,
   ---F. Supp. 3d ---, 2017 WL 4685297 (D.D.C. Oct. 17, 2017), *appeal
   dismissed*, 2017 WL 6553388 (D.C. Cir. Dec. 8, 2017) ...............................4, 12, 17

*In re Domestic Airline Travel Antitrust Litig.*,
   221 F. Supp. 3d 46 (D.D.C. 2016) ..............................................................................16

*Edelman v. Croonquist*,
   No. 09-1938, 2010 WL 1816180 (D.N.J. May 4, 2010) ...............................................9

*Farah v. Esquire Magazine*,
  736 F.3d 528 (D.C. Cir. 2013) .................................................................................4, 14

*Filippo v. Lee Publ'ns, Inc.*,
  485 F. Supp. 2d 969 (N.D. Ind. 2007) ...........................................................................8

*Forte v. Jones*,
  No. 1:11-cv-0718, 2013 WL 1164929 (E.D. Cal. Mar. 20, 2013)..........................................10

*Guilford Transp. Indus., Inc. v. Wilner*,
  760 A.2d 580 (2000) .....................................................................................9, 11

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989)..............................................................................................5

*Hourani v. Psybersolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C. 2016) (per curiam), *aff'd*, 690 F. App'x 1 (D.C.
  Cir. 2017) ......................................................................................................4

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988)...............................................................................................20

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
  856 F.3d 106 (D.C. Cir. 2017) (Kavanaugh, J.), *cert. denied*, 138 S. Ct. 366
  (Oct. 16, 2017) ..............................................................................................4, 21

*Kavanagh v. Zwilling*,
  997 F. Supp. 2d 241 (S.D.N.Y. 2014), *aff'd*, 578 F. App'x 24 (2d Cir. 2014).......................12

*Lane v. Random House, Inc.*,
  985 F. Supp. 141 (D.D.C. 1995) ..............................................................................12

*Lohrenz v. Donnelly*,
  350 F.3d 1272 (D.C. Cir. 2003) .........................................................................15, 17

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991).......................................................................................20, 21

*Mayfield v. NASCAR, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ................................................................................15

*McCaskill v. Gallaudet Univ.*,
  36 F. Supp. 3d 145 (D.D.C. 2014) .......................................................................3, 10

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)...............................................................................................14

*Moldea v. N.Y. Times Co.*,
    22 F.3d 310 (D.C. Cir. 1994) ...........................................................................12

*Montgomery v. Risen*,
    197 F. Supp. 3d 219 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017) ............................8

*Myers v. Plan Takoma, Inc.*,
    472 A.2d 44 (D.C. 1983) ................................................................................5

*Nader v. de Toledano*,
    408 A.2d 31 (D.C. 1979) ...............................................................................20

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..................................................................................2, 5

*Ollman v. Evans*,
    750 F.2d 970 (D.C. Cir. 1984) ...................................................................5, 7, 14

*Overhill Farms, Inc. v. Lopez*,
    190 Cal. App. 4th 1248 (2010) ........................................................................8

*Parisi v. Sinclair*,
    774 F. Supp. 2d 310 (D.D.C. 2011) ...................................................................4

*Potter v. Associated Press*,
    No. 3:15CV38, 2015 WL 4393401 (E.D. Va. July 15, 2015) .............................................15

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ........................................................................13

*Purcell v. Ewing*,
    560 F. Supp. 2d 337 (M.D. Pa. 2008) .................................................................14

*Raible v. Newsweek, Inc.*,
    341 F. Supp. 804 (W.D. Pa. 1972) .....................................................................9

*Rivera v. Rosenberg & Assocs.*,
    142 F. Supp. 3d 149 (D.D.C. 2015) ....................................................................3

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) .........................................................................15

*Smith v. Clinton*,
    253 F. Supp. 3d 222 (D.D.C. 2017), *appeal filed*, No. 17-5133 (D.C. Cir. June
    5, 2017) .............................................................................................4

*Stevens v. Tillman*,
    855 F.2d 394 (7th Cir. 1988) .........................................................................7

*Tavoulareas v. Orio*,
    817 F.2d 762 (D.C. Cir. 1987) ........................................................................11

*Thomas v. News World Commc'ns*,
    681 F. Supp. 55 (D.D.C. 1988) ....................................................................3, 5

*Washington v. Smith*,
    893 F. Supp. 60 (D.D.C. 1995), *aff'd*, 80 F.3d 555 (D.C. Cir. 1996) ....................................21

*Weyrich v. New Republic, Inc.*,
    235 F.3d 617 (D.C. Cir. 2001) ....................................................................3, 6

*White v. Fraternal Order of Police*,
    909 F.2d 512 (D.C. Cir. 1990) ................................................................4, 6, 11

*Zandford v. Nat'l Ass'n of Secs. Dealers, Inc.*,
    19 F. Supp. 2d 1 (D.D.C. 1998) ......................................................................4

**Other Authorities**

ADL, *No, the "OK" Gesture Is Not a Hate Symbol* (May 1, 2017),
    https://www.adl.org/blog/no-the-ok-gesture-is-not-a-hate-symbol ........................................16

Anis Shivani, *What is 'white supremacy'? A brief history of a term, and a
    movement, that continues to haunt America*, SALON (Apr. 23, 2017),
    https://goo.gl/49ozYB ............................................................................8

Emily Shugerman, *Two members of alt-right accused of making white
    supremacist hand signs in White House after receiving press passes*,
    INDEPENDENT (Apr. 29, 2017),
    http://www.independent.co.uk/news/world/americas/us-politics/white-power-
    hand-symbol-cassandra-fairbanks-mike-cernovich-alt-right-white-house-
    a7709446.html .................................................................................17

Martin Gould, *EXCLUSIVE: White power at the White House – Trump intern
    flashes 'alt-right' symbol used by notorious extremists during group photo
    with the president*, DAILY MAIL (Dec. 28, 2017) ........................................................2

Naomi Lim, *Former White House intern poses with 'white power' hand gesture in
    photo with Trump: Report*, WASH. EXAMINER (Dec. 28, 2017),
    http://www.washingtonexaminer.com/former-white-house-intern-poses-with-
    white-power-hand-gesture-in-photo-with-trump-report/article/2644537 ..................................2

Scott Greenfield, *The News That's Fit To Print*, Simple Justice (Nov. 15, 2016),
    https://goo.gl/qocYb1 ............................................................................20

## PRELIMINARY STATEMENT

Plaintiff's libel lawsuit is deficient as a matter of law and should be dismissed.  Nothing in her Opposition (ECF No. 15) ("Pl. Opp.") establishes otherwise. Plaintiff fails to show how Defendant Emma Roller's tweets criticizing the political implications of a photo of Plaintiff making a "white power hand gesture" while in the White House as a credentialed reporter could be construed as anything other than subjective opinion.  Under well settled law, an expression of opinion (that cannot be objectively proven true or false) made in the course of vigorous political debate on social media may not be the basis of a libel claim.  *See* Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss (ECF No. 12) ("Def. Mem.") at 8-18. Further, Plaintiff's Complaint fails for a separate and independently sufficient reason:  Plaintiff concedes that she is a public figure, but fails to plausibly allege *any* facts that would show that Roller published her tweets with the requisite "actual malice"—that is, with subjective awareness her interpretation was factually false or with serious doubts as to the truth.  *See id.* at 18-27.  Nor could she, given that Roller's interpretation was (and remains) widely shared across the political spectrum.  Indeed, Plaintiff has not even alleged facts that could establish Roller's statements were false—another independent reason why the Complaint should be dismissed.  *See id.* at 22 n.28.

Plaintiff attempts to save her meritless claim by accusing Roller of "malevolent[ly]" "lying" that Plaintiff made a "white power hand gesture."  Pl. Opp. at 12.  But in making this baseless accusation, Plaintiff ignores that, at the time Roller commented on the photo (which Plaintiff herself posted on Twitter), numerous news publications had *already* reported on the fact that the "OK" hand gesture had been adopted by white nationalist figures, leading to extensive debate over the political meaning of the gesture.  *See* Def. Mem. at 2-3 nn.3-4.  That debate

continues to this day, only further underscoring the gesture's inherent ambiguity.[1]  *See id.* at 9-11.  Against this background, Plaintiff's demand for "damages" of $250,000 to "deter" participation in political debate is particularly outrageous.  Compl. at 7.

More broadly, Plaintiff fails to acknowledge that protection of political speech is the highest purpose of the First Amendment, and that the tweet at issue is a classic example of such speech.  In its landmark decision in *New York Times Co. v. Sullivan*, the Supreme Court affirmed that libel claims must be considered "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open."  376 U.S. 254, 270 (1964).  Indeed, as Chief Justice Roberts has stated, there is "practically universal agreement" that a "major purpose" of the First Amendment is to protect core political speech, because "[d]iscussion of public issues" is "integral to the operation of our system of government."  *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734, 755 (2011) (citation and internal quotation marks omitted).  Plaintiff's own complaint frames the speech at issue around a broader "political war" among "ideological adversaries" in journalism—where issues of partisan journalism and "fake news" continue to be the subject of intense public debate.  Compl. at 2.  Plaintiff's effort to silence a fellow journalist from expressing political

---

[1] Just two weeks ago, a White House intern made headlines for using the very same "OK" gesture in a group photo with the President.  Although the intern later denied any intent to express support for white supremacy, numerous articles referred to the gesture as a "known 'white power' sign" and a "white power hand gesture," first used by white nationalists like Richard Spencer and, later, participants in the Charlottesville rallies in August 2017.  Martin Gould, *EXCLUSIVE: White power at the White House – Trump intern flashes 'alt-right' symbol used by notorious extremists during group photo with the president*, DAILY MAIL (Dec. 28, 2017), http://www.dailymail.co.uk/news/article-5216137/White-House-intern-flashes-white-power-sign-Trump.html; Naomi Lim, *Former White House intern poses with 'white power' hand gesture in photo with Trump: Report*, WASH. EXAMINER (Dec. 28, 2017), http://www.washingtonexaminer.com/former-white-house-intern-poses-with-white-power-hand-gesture-in-photo-with-trump-report/article/2644537.

criticism of her is anathema to the First Amendment, and this Court should dismiss the

Complaint.

## ARGUMENT

I.      **COURTS ROUTINELY DISMISS LIBEL CLAIMS EARLY, ESPECIALLY IN THE CONTEXT OF CORE POLITICAL SPEECH**

Plaintiff's Complaint fails to state a claim as a matter of law.  Plaintiff tries to escape the

consequences of her pleading deficiencies by arguing that, on a Rule 12(b)(6) motion to dismiss,

a plaintiff is "entitled to all favorable inferences."  Pl. Opp. at 11.  But that principle does not

apply "to legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And

"[w]here, as here, the complaint's factual allegations are contradicted by exhibits incorporated by

reference in the complaint and of which the Court may take judicial notice, the Court need no

longer accept as true plaintiff's version of events."  *Rivera v. Rosenberg & Assocs.*, 142 F. Supp.

3d 149, 161 (D.D.C. 2015) (citing *Kaempe v. Myers,* 367 F.3d 958, 963 (D.C. Cir. 2004)).[2]

Plaintiff also fails to recognize that courts <u>routinely</u> dismiss libel claims at the pleading

stage, including where, as here, the challenged statements are non-actionable expressions of

opinion,[3] where the plaintiff fails to adequately plead the statements (or implications) are false,[4]

---

[2] *See* Def. Mem. at 1-6 nn.1-16 (discussing relevant news articles and internet sources providing context for the challenged speech, and case law establishing that a district court may take judicial notice of such material on a motion to dismiss); *see also infra* at 16-17 (discussing ADL and *Independent* articles relied upon by Plaintiff).

[3] *See, e.g.*, *Weyrich v. New Republic, Inc*., 235 F.3d 617, 624-26 (D.C. Cir. 2001) (dismissal where "paranoia" was not verifiable statement of fact, but instead a critique of plaintiff's "unwavering and, ultimately, self-defeating political dogmatism"); *McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 159 (D.D.C. 2014) (holding that statement plaintiff signed "anti-gay petition" was non-actionable opinion); *Carpenter v. King*, 792 F. Supp. 2d 29, 37 (D.D.C. 2011) (dismissing based on, *inter alia*, non-actionable opinion), *aff'd*, 473 F. App'x 4 (D.C. Cir. 2012); *Thomas v. News World Commc'ns*, 681 F. Supp. 55, 63 (D.D.C. 1988) (dismissing claim based

and where the plaintiff fails to plausibly plead that the defendant acted with actual malice.[5]

Indeed, as the D.C. Circuit recently reaffirmed, libel lawsuits, which threaten to chill speech, should be carefully scrutinized and dismissed as early as possible:

> The First Amendment guarantees freedom of speech and freedom of the press. Costly and time-consuming defamation litigation can threaten those essential freedoms.  To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.

*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.)

(reversing denial of summary judgment on actual malice grounds in libel case) (emphasis added),

*cert. denied*, 138 S. Ct. 366 (Oct. 16, 2017).[6]

---

on calling plaintiff "un-American" as non-actionable opinion); *see also Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (affirming dismissal of libel suit on 12(b)(6) grounds, where article only raised questions rather than stating defamatory facts); *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (affirming dismissal of claim over satirical article).

[4] *See, e.g.*, *White v. Fraternal Order of Police*, 909 F.2d 512, 525-26 (D.C. Cir. 1990) (granting pre-discovery summary judgment where plaintiff failed to meet standard for defamation-by-implication); *Smith v. Clinton*, 253 F. Supp. 3d 222, 242 (D.D.C. 2017) (rejecting defamation-by-implication claim), *appeal filed*, No. 17-5133 (D.C. Cir. June 5, 2017); *Zandford v. Nat'l Ass'n of Secs. Dealers, Inc.*, 19 F. Supp. 2d 1, 3 (D.D.C. 1998) (failure to adequately allege falsity).

[5] *See, e.g.*, *Deripaska v. Associated Press*, ---F. Supp. 3d ---, 2017 WL 4685297, at *3 (D.D.C. Oct. 17, 2017) (dismissing for failure to plausibly plead actual malice), *appeal dismissed*, 2017 WL 6553388 (D.C. Cir. Dec. 8, 2017); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 144 (D.D.C. 2016) (per curiam), *aff'd*, 690 F. App'x 1 (D.C. Cir. 2017) (affirming dismissal where "bald allegations" were insufficient to plausibly plead actual malice); *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 319 (D.D.C. 2011) (dismissing for "fail[ure] to allege facts sufficient to support the reasonable inference" that defendant acted with actual malice); *see also* Def. Mem. at 7 n.17 (collecting Circuit cases affirming that *Twombly/Iqbal* standard requires a plaintiff to plausibly plead actual malice, and dismissing complaints where plaintiffs failed to do so).

[6] *See also* Def. Mem. at 7-8; *Coles v. Washington Free Weekly, Inc.*, 881 F. Supp. 26, 30 (D.D.C. 1995) ("Given the threat to the first amendment posed by nonmeritorious defamation actions, it is particularly appropriate for courts to scrutinize such actions at an early stage of the proceedings to determine whether dismissal is warranted."), *aff'd*, 88 F.3d 1278 (D.C. Cir.

These principles apply with extra force where the speech being chilled is the expression of opinions in the course of vigorous and even heated political debate.  *See generally Citizens United v. FEC*, 558 U.S. 310, 340 (2010) ("[P]olitical speech must prevail against laws that would suppress it, whether by design or inadvertence.").  In *Sullivan*, the Supreme Court emphasized that "debate on public issues" "may well include vehement, caustic, and sometimes unpleasantly sharp attacks" on public figures.  376 U.S. at 270.   As Judge Bork explained in his oft-cited concurrence in the D.C. Circuit's *en banc* ruling in *Ollman v. Evans*, "in order to protect a vigorous marketplace in political ideas and contentions, we ought to accept the proposition that those who place themselves in a political arena must accept a degree of derogation that others need not."  750 F.2d 970, 1002 (D.C. Cir. 1984) (Bork, J., concurring) (explaining that "political activist" plaintiff, "by his own actions, entered a political arena in which heated discourse was to be expected and must be protected").[7]

Plaintiff—a self-proclaimed "advocate journalist" and admitted public figure—undoubtedly placed herself in the "political arena," and indeed directly invited debate and commentary by posting the photo of herself in front of the press podium as a credentialed White House journalist, making a hand gesture that carried political significance and meaning.  *See* Compl. at 2.  Having done so, Plaintiff may not use a libel lawsuit to silence criticism of the political implications of her actions.  *See Thomas*, 681 F. Supp. at 62 (explaining that a "core purpose of the First Amendment" is to protect the right to publish "even vituperative …

---

1996); *Myers v. Plan Takoma, Inc.*, 472 A.2d 44, 50 (D.C. 1983) ("In this area [defamation], perhaps more than any other, the early sifting of groundless allegations from meritorious claims made possible by a Rule 12(b)(6) motion is an altogether appropriate and necessary judicial function.").

[7] *Cf. Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 687 (1989) (citing Judge Bork's *Ollman* concurrence to emphasize that the robust discussion of political candidates "must be protected with special vigilance").

critic[ism] of opponents in a political debate").  This political speech context gives extra urgency to Roller's motion to dismiss.

## II.      ROLLER'S TWEETS CONVEY NON-ACTIONABLE EXPRESSIONS OF HER POLITICAL OPINION

Roller's statements constitute expressions of subjective opinion, not statements of objectively verifiable fact, and therefore cannot be the basis of a libel claim.  *See* Def. Mem. at 8-18.  Indeed, a tweet using a politicized term like "white power" (about which there can be disagreement as to its precise meaning) is a classic expression of non-actionable opinion.

Plaintiff fundamentally misconstrues defamation law in her Opposition.  She spends much of her brief trying to show that Roller's characterization of Plaintiff's gesture is capable of defamatory meaning.  *See* Pl. Opp. at 4, 5, 9.  But Plaintiff overlooks that defamatory meaning is just one element in the inquiry.  She also must establish, *inter alia*, that the challenged statement (1) is not opinion, but rather objectively verifiable as false; (2) is, in fact, false; and (3) was published with the requisite fault—here, actual malice.  *See White*, 909 F.2d at 520 ("Defamatory meaning and falsity are distinct elements of the tort of defamation and are considered separately.").  Indeed, objective "[v]erifiability [of the challenged statement] is … a critical threshold question at the Rule 12(b)(6) stage."  *Weyrich*, 235 F.3d at 624.  Because both the content and context of Roller's tweets make clear she is expressing a subjective opinion and not stating objective facts, Plaintiff's libel claim fails as a matter of law, regardless of whether the challenged statement is capable of a defamatory meaning.

### A.      Use of Charged Rhetoric in the Course of Political Debate Cannot Be the Basis of a Libel Claim

In her tweets, Roller used the term "white power" to criticize the political implications of Plaintiff's actions—specifically in the context of the fact that Plaintiff was a credentialed White

House journalist when she made the gesture.[8]  Such criticism cannot be objectively proven true or false.  Def. Mem. at 9-14.  In her Opposition, Plaintiff miscasts this argument as Roller claiming that "she doesn't know what the term 'white power' means," that "nobody else has any idea" what the term means, and that the term is so "innocent, innocuous, ambiguous, [and] ambivalent," that no jury could think Roller's statement "could have any possible defamatory meaning."  Pl. Opp. at 3.  Not so.  Roller is not claiming that *she* doesn't know what the term means, nor that the term does not have any negative connotations—indeed, Roller's statement was clearly intended to be pointed political criticism of Plaintiff's actions.  But politically charged terms like "white power" mean different things to different people, and thus are non-actionable opinion.

The key threshold question in determining whether a statement constitutes non-actionable opinion is whether a statement has "a *precise* core of meaning for which a consensus of understanding exists" such that it can be "*objectively* characterized as true or false."  *Ollman*, 750 F.2d at 979 (emphasis added).  Courts have consistently held that, when used "*in the realm of political debate*," terms like racist, fascist, anti-gay, and nationalist are "concepts whose content is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity." *Buckley v. Littell*, 539 F.2d 882, 893-94 (2d Cir. 1976) (emphasis added).  *See* Def. Mem. at 12-14 (collecting cases); *see also Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) (holding that "[a]ccusations of 'racism'" are not actionable as they have "becom[e] common coin in political discourse").[9]

---

[8] Roller's first tweet stated "just two people doing a white power hand gesture in the White House," along with a screenshot of Plaintiff's own tweet and photo.  *See* Def. Mem. at 4 n.6.

[9] Indeed, one of the main articles Plaintiff cites to in her own brief in an effort to establish a fixed definition of the term "white power" actually emphasizes the "*lack of clarity*" around terms like

Plaintiff misses the point when she argues that courts and juries are asked to determine issues of "racial animus" in discrimination or hate crime cases to support her claim that there is a singular meaning for the word "white power." *See* Pl. Opp. at 6, 9. While courts have recognized that "a claim of racially motivated employment termination is a provably false fact," since it refers to concrete actions that are "subject to proof in wrongful termination claims on a regular basis," those same courts hold that "*general* statements charging a person with being racist, unfair, or unjust … constitute mere name calling and *do not contain a provably false assertion of fact.*" *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1262-63 (2010) (emphasis added).

Roller's statement plainly falls into the category of "general statements."  After all, an interpretation of a hand gesture as a "white power" gesture is, at most, a "general" "charg[e]" that groups who have adopted the gesture have white supremacist views. *Id.*  To prove that statement false would require establishing that Roller's subjective view of the political beliefs of another person is somehow objectively incorrect.  But courts hold that an opinion as to another person's views or motivations is not verifiably false.  Indeed, "the moment that we are involved in ascertaining what meaning [a plaintiff] purport[ed] to convey, … we are in the area of opinion as opposed to factual assertion." *Buckley*, 539 F.2d at 892.[10]  This principle applies with even more force to opinions about another person's *political* views, and courts consistently reject libel

"white supremacy."  Anis Shivani, *What is 'white supremacy'? A brief history of a term, and a movement, that continues to haunt America*, SALON (Apr. 23, 2017), https://goo.gl/49ozYB (emphasis added) (cited at Pl. Opp. at 10 n.10).

[10] *See also Montgomery v. Risen*, 197 F. Supp. 3d 219, 248 (D.D.C. 2016) (holding that defendant's "assertion that [the plaintiff] was motivated out of greed or ambition is a subjective judgment that is not verifiable") (collecting cases), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017); *Filippo v. Lee Publ'ns, Inc.*, 485 F. Supp. 2d 969, 980-81 (N.D. Ind. 2007) ("Courts have repeatedly held that statements about another person's attitudes, beliefs, and personality traits constitute protected opinions.") (collecting cases).

claims based on these types of terms.  *See, e.g.*, *Edelman v. Croonquist*, No. 09-1938, 2010 WL 1816180, at *5-6 (D.N.J. May 4, 2010) ("The defendant's characterization of her in-laws as racists is a subjective assertion, not sufficiently susceptible to being proved true or false to constitute defamation."); *Raible v. Newsweek, Inc.*, 341 F. Supp. 804, 807 (W.D. Pa. 1972) ("We hold that to call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic or sociological philosophies gives no rise to an action for libel.").  *See also* Def. Mem. at 12-14.

Roller's tweets did not purport to say what Plaintiff meant by using the gesture, but even if they did, Roller's subjective judgment in using a politically-charged term like "white power" is a classic expression of protected opinion.

### B.    Roller's Tweets Do Not Say or Imply What Plaintiff Claims They Say

In order to bolster her argument that Roller made a "definitive statement" that is "verifiably false," Pl. Opp. at 6, Plaintiff relies on a distorted reading of Roller's tweets that is totally at odds with what the tweets actually say.  It is black letter law that, when determining if a plaintiff has stated a libel claim, "[t]he court should not … indulge far-fetched interpretations of the challenged publication."  *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (2000).[11] Plaintiff's efforts to mangle the language of Roller's statements to manufacture a libel claim should be rejected.

---

[11] *See also Benz v. Washington Newspaper Publ'g Co.*, No. 05-cv-1760, 2006 WL 2844896, at *3 (D.D.C. Sept. 29, 2006) (explaining that the words at issue must be "given their plain and natural meaning, and 'the statements at issue should not be interpreted by extremes, but should be construed as the average or common mind would naturally understand them'") (citation omitted).

Plaintiff strains credulity by asking the court to view Roller's first tweet[12]—which
provided only Roller's interpretation of the *gesture* Plaintiff was using—as not only attributing
"specific racist beliefs" to Plaintiff, Pl. Opp. at 9, but even "accus[ing] Plaintiff of being part of a
white nationalist organization."  Plaintiff's Opposition to Special Motion to Dismiss, ECF No. 16
("SLAPP Opp.") at 10.  Plaintiff needs to urge this warped reading because the case law
recognizes a sharp distinction between, on the one hand, "allegations of membership or well-
defined political affiliation" (like being a member of the Communist Party), which "are readily
perceivable as allegations of fact susceptible to proof or disproof of falsity," and, on the other
hand, broad characterizations using politically charged terms like "fascist," "racist" or, here,
"white power," which are not actionable. *Buckley*, 539 F.2d at 894.[13]  However, contrary to
Plaintiff's argument, Roller's tweet does not mention any defined "white nationalist
organization" at all, let alone accuse Plaintiff of being "part of" one.  *See McCaskill*, 36 F. Supp.
3d at 158 (noting that plaintiff "seems to overlook the fact that the article never used 'anti-gay'
to refer to *her*," but rather "said only that [plaintiff] signed an 'anti-gay marriage petition,' and
… made no reference to her personal views about homosexuality, marriage, or the potential
legislation").

Plaintiff's proposed reading of the second challenged tweet is even more absurd.  In
another effort to manufacture a defamatory statement where none exists, Plaintiff claims Roller
tweeted that "the Anti-Defamation League specifically identified the gesture used by the Plaintiff
was a 'white power' gesture."  Opp. at 8-9.  The tweet says nothing of the sort.  It reads, in full,

---

[12] "just two people doing a white power hand gesture in the White House"

[13] *See also Forte v. Jones*, No. 1:11-cv-0718, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013)
("[I]t is important to stress that it is the allegation of membership in the Ku Klux Klan that is
actionable; the allegation that a person is a 'racist,' on the other hand is not actionable because
the term 'racist' has no factually-verifiable meaning.") (cited at Pl. Opp. at 9).

"for reference," and provides a link to a page on the ADL website and the "WP"/hand graphic. There isn't the slightest suggestion in Roller's tweet that the ADL said anything beyond what appears on the linked page (which discusses a two-handed gesture where one hand forms a "W" and the other forms a "P" as "White Power (hand sign)").  As the D.C. Circuit has held, "[n]othing in law or common sense supports saddling a libel defendant with civil liability for a defamatory implication nowhere to be found in the published article itself."  *Tavoulareas v. Orio*, 817 F.2d 762, 781 (D.C. Cir. 1987).

To the extent Plaintiff argues that Roller's tweets *implied* that Plaintiff belonged to a white nationalist organization or that the ADL had specifically, at that time, addressed the gesture Plaintiff made,[14] her claim falls far short of the "rigorous standards which the courts have applied to claims of libel by implication."  *Guilford*, 760 A.2d at 601.  The D.C. Circuit has stressed that, in cases where the defamation claim is based on unstated implications, "courts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning."  *White*, 909 F.2d at 518-19.  Thus, to survive dismissal, the plaintiff must not only (1) show that the language can be "reasonably read to impart the false innuendo," but also (2) must allege facts that "affirmatively suggest that the author intends or endorses the inference."  *Guilford*, 760 A.2d at 596 (quoting *Chapin v. Knight-Ridder*, 993 F.2d 1087, 1092-93 (4th Cir. 1993)); *accord White*, 909 F.2d at 520 (requiring "additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference").

---

[14] The ADL page to which Roller linked in the second tweet on April 28, 2017, is distinct from the article published by the ADL three days *after* the tweets in suit, which Plaintiff cites in her Complaint and brief.  *See* discussion *infra* at 16 and nn.16-17.

Here, Plaintiff cannot even meet the first prong because the plain language of the tweet cannot be reasonably read to convey the implications she ascribes to it. *See Deripaska*, 2017 WL 4685297, at *7 (dismissing implication claim where "nothing in the article c[ould] be read to impart" the defamatory meaning urged by the plaintiff). But even if Plaintiff's readings were reasonable (and they are not), nothing in Roller's tweets remotely suggests that Roller *intended* the implausible meaning Plaintiff attempts to draw from them. On the contrary, Roller specifically stated in the very next tweet in the thread that "people in the alt-right vigorously deny [the hand gesture] has anything to do with white power, but keep using it to annoy the libtards." Where, as here, the publication itself "explicitly refutes the implication Plaintiff claims it has," the defamation-by-implication claim fails "as a matter of law." *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 255 (S.D.N.Y. 2014), *aff'd*, 578 F. App'x 24 (2d Cir. 2014); *see also Deripaska*, 2017 WL 4685297, at *9 (holding it was "impossible to find the implications that [the plaintiff] insists are present" when article "specifically includes facts that negate the implications that [the plaintiff] conjures up").

### C.     The Context and Tone of the Tweets Makes Clear That Roller Was Offering Her Subjective Interpretation of Plaintiff's Photograph

It is well established that a statement is "not actionable in defamation" where the writer expresses an opinion and fully lays out the basis for her view, because the reader "understands that such supported opinions represent the writer's interpretation of the facts presented," and remains "free to draw his or her own conclusions based upon those facts." *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 315-16 (D.C. Cir. 1994). *See also Lane v. Random House, Inc.*, 985 F. Supp. 141, 150 (D.D.C. 1995) ("'[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.'") (citation omitted).

12

Roller's tweets are a classic example of this type of protected opinion.  Roller fully laid out the basis for her view that Plaintiff's photo depicted "just two people doing a white power hand gesture in the White House."  The most important fact that Roller provided was, of course, Plaintiff's own photo, which was part of Roller's tweet.  Plaintiff cannot deny that she and Mike Cernovich made the gesture in the White House—she disputes only Roller's *interpretation* of the gesture's meaning.  But Roller also provided further information that allowed readers to decide whether or not they agreed with her assessment.  That information included the link to the ADL page (which Roller provided "for reference" and did not attempt to further characterize or summarize); the observation that the gesture "happens to be very popular among alt-right luminaries"; and her acknowledgment that "people in the alt-right vigorously deny [the hand gesture] has anything to do with white power, but keep using it to annoy the libtards."  Roller did not purport to be in possession of additional, objective facts about Plaintiff, but instead offered "interpretations of the facts available to both [Roller] and the reader," thereby "making it clear that the challenged statements represent [her] own interpretations of those facts and leaving the reader free to draw his own conclusions."  *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995).  Courts consistently hold these types of statement are "protected by the First Amendment."  *Id.* at 1157.

As explained in Roller's motion, the fact that she offered this interpretation in *tweets*—short, off-the-cuff social media posts—only reinforces the conclusion that readers would understand the statements as representing her subjective point of view.  *See* Def. Mem. at 17-18.  Plaintiff reads these common-sense arguments as proposing a "magical Twitter exception to lies and libel."  Pl. Opp. at 7.  But Roller never suggested that every statement posted on Twitter is automatically immune from liability.  Rather, as case after case has recognized, online social

13

media are forums in which readers expect to see expressions of personal opinion, not reported

facts.  *See* Def. Mem. at 17-18 and n.25.  The context and forum of the publication necessarily

informs a court's determination whether a statement is actionable.  *See id.*

The "loose, figurative" tone of Roller's tweets further underlines the subjective nature of

the statements.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990).  Both of the tweets are

sentence fragments, without capitalization or punctuation, and come across as informal

commentary, not definitive news reporting.  *See Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180,

186 (4th Cir. 1998) (noting that "the imprecise, casual language" in a "breezy stocktip" "differ

greatly" from an "investigative report," and holding that, based on "the tenor, language, and

context of the article … the challenged statements constitute a subjective view, not a factual

statement").  And Roller's use of the word "just" in the first tweet ("just two people doing a

white power hand gesture in the White House") expresses a sense of sarcasm, which underscores

the loose and figurative (as opposed to literal) nature of her statement.  *See, e.g.*, *Bentkowski v.*

*Scene Magazine*, 637 F.3d 689, 695 (6th Cir. 2011) (holding statement not actionable when tenor

of publication is "sarcastic, more typical of persuasive speech than factual reporting") (citation

omitted); *Purcell v. Ewing*, 560 F. Supp. 2d 337, 342 n.5 (M.D. Pa. 2008) (holding that

statements in online message board post were non-actionable opinion "[i]n light of the sarcastic

tone of the posting"); *cf. Farah*, 736 F.3d at 531 (affirming dismissal of libel claim "because the

blog post was fully protected political satire").

In sum, every factor courts look to when determining whether a statement expresses a

non-actionable opinion versus a verifiably false fact weighs strongly in favor of opinion.  *See*

Def. Mem. at 9 (outlining *Ollman* factors).  Plaintiff's Opposition fails to show that Roller's

14

expression of political opinion can be objectively proven true or false, and her libel claim must therefore be dismissed.

### III.    PLAINTIFF HAS NOT ALLEGED A SINGLE FACT THAT WOULD PLAUSIBLY ESTABLISH ACTUAL MALICE

Plaintiff does not dispute that she is a public figure for purposes of this libel case—nor could she, given that, by her own description, she is a "prominent[]" "advocate journalist," who has been profiled in major publications. *See* Def. Mem. at 1 n.1, 19-21 (quoting Compl. at 1). Therefore, in order to survive dismissal, she must plausibly allege that Roller published the statements at issue with "actual malice." *Lohrenz v. Donnelly*, 350 F.3d 1272, 1284 (D.C. Cir. 2003). Plaintiff does not come close to meeting this standard. The Complaint must be dismissed for this separate and independent reason.

In her Opposition, Plaintiff tries to avoid dismissal by insisting, without any basis, that Roller "lied" and "knew she lied." Pl. Opp. at 12. But courts consistently hold that bare assertions that a defendant "knowingly lied or made her statements 'maliciously,' merely provide 'conclusory allegation[s]' that cannot survive a motion to dismiss." *Potter v. Associated Press*, No. 3:15CV38, 2015 WL 4393401, at *9 (E.D. Va. July 15, 2015) (quoting *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012)) (dismissing libel claim for failure to adequately plead actual malice). Simply asserting that a defendant "knew she lied" is not enough to satisfy the *Twombly*/*Iqbal* pleading standard. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56-58 (1st Cir. 2012) (holding that use of "actual-malice buzzwords" is insufficient).[15] And here, the pre-existing (and ongoing) media coverage over the meaning and

---

[15] *See also Mayfield*, 674 F.3d at 378 (holding that bare assertion that defendants' statements "'were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity'" was "entirely insufficient" and "precisely" the type of "allegations that *Twombly* and *Iqbal* rejected");

political implications of the gesture negates any possible inference that Roller "lied" or fabricated out of thin air her interpretation of the gesture made by Plaintiff.

Indeed, Plaintiff cannot show that Roller's statements were "false" in the first place, let alone that Roller knowingly "lied."  As acknowledged by published articles both before and after Roller's tweets, including those cited in Plaintiff's own papers, the gesture was, in fact, being used by white nationalist figures.  *See* Def. Mem. at 2-3 nn.3-4; *supra* note 1.  Plaintiff relies heavily on an article published by the ADL on May 1, 2017, three days *after* Plaintiff published her photo and *after* the challenged tweets were posted.[16]  But far from showing falsity, the ADL Article actually confirms that Roller's interpretation of the gesture was reasonable and supportable.  The Article states that many people on social media had been interpreting the "OK" gesture as a "white supremacist hand sign."  *See* ADL Article.  The ADL Article explains further that the political discussion over the meaning of the gesture was at least partially the result of a concerted effort or "hoax" by certain groups which claimed that "the OK hand sign is a symbol of white supremacy."[17]  *Id.*  Plaintiff also relies on an article published in the *Independent*, which

---

[16] *See* ADL, *No, the "OK" Gesture Is Not a Hate Symbol* (May 1, 2017), https://www.adl.org/blog/no-the-ok-gesture-is-not-a-hate-symbol (the "ADL Article").  *See* Compl. at 1-2, ¶¶ 10, 12; Pl. Opp. at 5-7, 9 & n.2 (relying on and quoting ADL Article).  On a motion to dismiss, the court may consider documents like the ADL Article, which are "incorporated by reference in the complaint," or "upon which the plaintiff's complaint necessarily relies even if the document is [not] produced … by the plaintiff in the complaint."  *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 54–55 (D.D.C. 2016) (citation and internal quotation marks omitted).

[17] Indeed, the ADL Article suggested that the "hoax" or effort to associate the "OK" gesture with "white power" may have been initiated and perpetrated by "white supremacists."  *See* ADL Article.

similarly refers to the pre-existing controversy over the meaning of the gesture, and notes public uses of the gesture by "alt-right" figures well before the challenged tweets were posted.[18]

In any event, even if Roller's interpretation of the gesture was in fact false, Plaintiff "does not come close to plausibly alleging" any facts to show that Roller published her statements with knowledge of such falsity. *Deripaska*, 2017 WL 4685297, at *6. Accordingly, she has not adequately pleaded actual malice. *See Lohrenz*, 350 F.3d at 1283 (explaining actual malice could be established with facts showing a defendant was "subjectively aware that it was highly probable that the story was '(1) fabricated; (2) so inherently improbable that only a reckless person would have put [it] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that appellees had obvious reasons to doubt'") (citation omitted).[19]

Plaintiff's arguments that she has plausibly pleaded actual malice essentially boil down to three contentions: (1) that Roller "did not perform simple research," and instead relied on "faulty information" that "could have been proven false by a quick online search"; (2) that Roller failed to "issue a single correction or retraction"; (3) that Roller had the malicious intent to "smear" Plaintiff because they are on opposite sides, politically. Pl. Opp. at 11-12. None of these assertions—either singly or in combination—plausibly establish actual malice, under well

---

[18] *See* Emily Shugerman, *Two members of alt-right accused of making white supremacist hand signs in White House after receiving press passes*, INDEPENDENT (Apr. 29, 2017), http://www.independent.co.uk/news/world/americas/us-politics/white-power-hand-symbol-cassandra-fairbanks-mike-cernovich-alt-right-white-house-a7709446.html. *See* Compl. at 1, ¶ 8, Opp. at 7 n.3 (relying on *Independent* Article).

[19] Plaintiff argues that actual malice may be showed by "circumstantial evidence," but fails to identify any facts or evidence that would even be probative of, much less establish, actual malice. Pl. Opp. at 10. *See, e.g.*, *Deripaska*, 2017 WL 2017 WL 4685297, at *5 (explaining "actual malice does not automatically become a question for the jury whenever the plaintiff introduces pieces of circumstantial evidence tending to show that the defendant published in bad faith") (citation omitted).

settled law.  *See* Def. Mem. at 23-26 (citing cases establishing that "mere proof of failure to investigate" does not constitute actual malice, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332 (1974); "there is no duty to retract or correct a publication, even where grave doubt is cast upon the veracity of the publication after it has been released," *Lohrenz*, 223 F. Supp. 2d at 56; and "ill-will does not establish actual malice, nor does a malevolent motive for publication," *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 81 (D.D.C. 2012)).

The purported "failure to investigate" is a non-starter.  Plaintiff does not identify any "reason [for Roller] to doubt the veracity" of her interpretation that would have required her to "examine evidence within easy reach" before tweeting her opinion. Pl. Opp. at 11 (citation omitted).  Plaintiff disingenuously asserts that "the contention that one of the country's most universally recognized hand gestures, the 'OK' gesture, could be rationally interpreted as a white power hand gesture is contrary to common sense." SLAPP Opp. at 7.  But Plaintiff's own contemporaneous statements—both to the press and on social media—suggest that she was not only aware of an active effort to convince people of the association of the gesture with "white power," but was intentionally referencing it when she posted the photo.[20]  Indeed, performing "simple research" would only reinforce Roller's interpretation, since a "quick online search" would have (1) yielded photos of avowed white nationalist Richard Spencer and other "alt-right" figures pointedly making the gesture in photographs posted on Twitter and elsewhere, *see* Def.

---

[20] *See* Def. Mem. at 5-6 (Plaintiff's contemporaneous social media posts referencing the photo of her making the gesture, including one saying "They've become so easy to troll you don't even have to make an effort anymore"); *id.* at 6 (subsequently-deleted tweet from Mike Cernovich, who appeared with Plaintiff in the photo:  "Trap was set and they walked into it.  Fake news looks trivial, absurd, and most of all dishonest."); *id.* at 11 n.19 (Plaintiff's statement to media acknowledging that the "OK" gesture was part of a "troll meme going around saying that it meant white power," but that "it was a joke because Trump supporters are always being called Nazis even when it isn't true").

Mem. at 2 n.3; (2) articles in mainstream publications discussing the gesture's use by such individuals and the fact that the gesture was being interpreted as a hate symbol, *see id.* at 2-3 nn.3-4; and (3) a "flood" of social media posts from people stating that the gesture was a "symbol of white supremacy" and disseminating graphics to show how the gesture signified the letters "W" and "P," *see* ADL Article (cited at Pl. Opp. at 5-7, 9 & n.2).

For the same reason, Roller's so-called "failure" to retract her tweets, does not give rise to any inference of actual malice.  Even setting aside that, as a matter of law, failure to retract does not establish actual malice, *see* Def. Mem. at 25, Plaintiff also does not point to any new information that would have made a retraction appropriate.  On the contrary, as demonstrated by the use of the OK gesture by white nationalists like the participants in the Charlottesville rally in August 2017 and the latest controversy over the White House intern, the gesture continues to carry political meaning and be widely interpreted as a "white power sign."  *See supra* note 1. And Roller's tweets, on their face, make clear that her interpretation was based on the acknowledged fact that the gesture "happens to be very popular among alt-right luminaries," and is being used to "annoy the libtards."  Nothing in the ADL Article cited by Plaintiff (or any other source) contradicts Roller's contentions.

Plaintiff's actual malice argument ultimately comes down to conclusory assertions that Roller had a "specific intent to spread smears" about "politically disfavored" "competitor journalists."  Pl. Opp. at 11.  This, of course, only reinforces that the speech at issue in this case lies at the core of the First Amendment's protection.  *See supra* at 2, 5.  But Plaintiff also fails to tie these free-floating accusations to anything concrete.  *See, e.g.*, *BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 33 (D.D.C. 2015) (dismissing where complaint lacked "any factual allegations supporting its conclusory allegations of discriminatory intent").  Indeed, Plaintiff makes baseless

allegations against Roller with any supporting citation.[21]  But even if Plaintiff's inflammatory accusations were at all grounded in reality, it is well settled that "actual malice can never be inferred from the mere presence" of "spite, ill will, general hostility, intention to injure, or hatred."  *Nader v. de Toledano*, 408 A.2d 31, 40 (D.C. 1979).  *See* Def. Mem. at 26; *see also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53 (1988) (holding that, "in the area of public debate about public figures," "the First Amendment prohibits" imposition of liability because a writer is "motivated by hatred or ill will").

In the end, in light of the political context, the ongoing public debate about the meaning of the gesture, and the admissions of Plaintiff and Cernovich suggesting they were trying to "troll" or "trap" people into thinking they made a "white power" gesture (*see* Def. Mem. at 6 n. 14 and 11 n.19), Plaintiff's use of the gesture was, at a minimum, highly ambiguous.  But the Supreme Court has consistently "refused to permit recovery" in libel for a writer's "'rational interpretation[]'" of a situation that "'bristle[s] with ambiguities.'"  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 519 (1991) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*,

---

[21] To take but one example, Plaintiff alleges in her complaint that Roller made an "argument for fake news" for the "'higher calling' of advocating for their favored groups" in a "tweet she tried to hide, but was later uncovered" (Compl. at 2); of "bragg[ing] about her intention to spread fake news in order to advance her political agenda," Pl. Opp. at 12; and "admitting… she believes in spreading fake news about people in the "higher" cause of "justice," SLAPP Opp. at 10.  No tweet by Roller is cited or attached and no basis for this accusation is identified.  In fact, on investigating Plaintiff's allegations, it appears that Plaintiff has misread a blog post that commented on a tweet by Roller.  The blogger quotes a tweet from Roller ("Journalists must decide: is our mission to pursue an impossible standard of 'balance,' or to speak truth to power and elevate the powerless?"), and *the blogger* characterizes the tweet as an "argument for fake news" to serve a "higher calling."  *See* Scott Greenfield, *The News That's Fit To Print*, Simple Justice (Nov. 15, 2016), https://goo.gl/qocYb1.  Roller never made an "argument for fake news" or referred to any "higher calling."  In any event, of course, these accusations have nothing whatsoever to do with the actual malice standard.

466 U.S. 485, 512 (1984)).  *See* Def. Mem. at 25-26.[22]  Thus, even if Roller had misinterpreted

what Plaintiff meant by using the gesture, that would not constitute actual malice.  *See Kahl*, 856

F.3d at 117 ("[H]onest misinterpretation does not amount to actual malice even if the publisher

was negligent in failing to read the document carefully.") (quoting *Jankovic v. Int'l Crisis Grp.*,

822 F.3d 576, 594 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1434 (Apr. 3, 2017)).

The Supreme Court has explained this "protection for rational interpretation serves First

Amendment principles by allowing an author the interpretive license that is necessary when

relying upon ambiguous sources."  *Masson*, 501 U.S. at 519.  The First Amendment values at

stake are only further heightened when the "rational interpretation" at issue amounts to

participation in robust political debate, which lies at the very core of the First Amendment's

protection.  *See supra* Section I.

## CONCLUSION

For all of the reasons set forth above, Defendant respectfully requests that the Court

dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: January 12, 2018

Respectfully submitted,

/s/ *Laura R. Handman*
Laura R. Handman (DC Bar No. 444386)
Eric J. Feder (DC Bar No. 1048522)

DAVIS WRIGHT TREMAINE LLP

---

[22] *See also Washington v. Smith*, 893 F. Supp. 60, 62 (D.D.C. 1995) (holding that a supportable interpretation of an ambiguous situation is "immunized even if a reasonable jury could find that the statements were mischaracterizations"), *aff'd*, 80 F.3d 555 (D.C. Cir. 1996).

1919 Pennsylvania Avenue, N.W., Suite 800
Washington, DC  20006-3401
(202) 973-4200
(202) 973-4499 (fax)
laurahandman@dwt.com
ericfeder@dwt.com

*Attorneys for Defendant Emma Roller*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I caused defendant Emma Roller's Reply Memorandum in Further Support of Motion to Dismiss Plaintiff's Complaint to be filed and served electronically via the Court's ECF system upon counsel of record.

Dated: January 12, 2018

/s/ *Laura R. Handman*

Laura R. Handman