# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CASSANDRA FAIRBANKS, an individual,**<br><br>Plaintiff,<br><br>v.<br><br>**EMMA ROLLER, an individual,**<br><br>Defendant. | Civil Action No. 1:17cv-01052-CKK<br><br><br>ORAL HEARING REQUESTED |

## DEFENDANT EMMA ROLLER'S REPLY MEMORANDUM IN FURTHER SUPPORT OF SPECIAL MOTION TO DISMISS UNDER THE D.C. ANTI-SLAPP ACT

Laura R. Handman (DC Bar No. 444386)
Eric J. Feder (DC Bar No. 1048522)

DAVIS WRIGHT TREMAINE LLP

1919 Pennsylvania Avenue, N.W., Suite 800
Washington, DC 20006-3401
(202) 973-4200
(202) 973-4499 (fax)
laurahandman@dwt.com
ericfeder@dwt.com

*Attorneys for Defendant Emma Roller*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    THIS COURT SHOULD APPLY THE SUBSTANTIVE PROVISIONS OF THE D.C. ANTI-SLAPP ACT IN THIS D.C. TORT LAW ACTION .............2

    II.    THE D.C. ANTI-SLAPP ACT, AS AUTHORITATIVELY INTERPRETED BY THE D.C. COURT OF APPEALS, IS CONSTITUTIONAL ................................................................................................4

    III.    THIS CASE FALLS SQUARELY WITHIN THE AMBIT OF THE ACT AND SHOULD BE DISMISSED .......................................................................5

CONCLUSION ..............................................................................................................................7

**PRELIMINARY STATEMENT**

This lawsuit is a quintessential SLAPP ("Strategic Lawsuit Against Public Participation"). Plaintiff Cassandra Fairbanks posted on Twitter a photo of herself posing in front of the White House press podium making an "OK" hand gesture at a time when there was an active debate (that continues to this day) over whether the gesture had been adopted by white nationalists. Defendant Emma Roller responded with a Twitter post criticizing the political implications of Plaintiff's actions—specifically in the context of the fact that Plaintiff was a credentialed White House journalist. Plaintiff's response was to file a defamation lawsuit to stifle that criticism and debate.

The D.C. Anti-SLAPP Act was passed for just this type of situation—where "one side of a political or public policy debate" aims to "punish or prevent the expression of opposing points of view" with a meritless lawsuit. *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1226 (D.C. 2016) (citation omitted). There can be no doubt that this lawsuit falls within the scope of the Act—Plaintiff's own Complaint frames the speech at issue as part of a broader "political war" "in the world of journalism." Compl. at 2. The only open question is whether the Act applies in this Court. The D.C. Court of Appeals resolved any doubt on that front in *Mann*, when it confirmed that the Act should be interpreted as imposing the same standards as the Federal Rules of Civil Procedure for dismissing a suit. *Mann*, 150 A.3d at 1238. Although dicta in the D.C. Circuit's earlier decision in *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015), suggested that the Act should not apply in Federal court, this Court should follow the "clear[] and unmistakabl[e]" guidance from a subsequent decision of the D.C. Court of Appeals interpreting a D.C. statute, and hold that the Act applies. *Easaw v. Newport*, 253 F. Supp. 3d 22, 35-36 (D.D.C. 2017) (Howell, C.J.). As set forth in Roller's Motion to Dismiss, Plaintiff cannot establish that her suit is "likely to succeed on the merits," since her Complaint fails to state a

1

claim as a matter of law.  D.C. Code § 16-5502(b).  Accordingly, the Court should dismiss the case pursuant to both Rule 12(b)(6) and the Act, and allow Roller to recover the costs and attorney's fees she has expended to defend her right to participate in public debate.  *See* D.C. Code § 16-504(a).

## ARGUMENT

**I.     THIS COURT SHOULD APPLY THE SUBSTANTIVE PROVISIONS OF THE D.C. ANTI-SLAPP ACT IN THIS D.C. TORT LAW ACTION**

Roller understands that the application of the D.C. Anti-SLAPP Act in this Court is an open question, but well-settled principles of federalism and binding authority from the D.C. Court of Appeals weigh strongly in favor of applying the Act to this diversity action.

When the D.C. Court of Appeals decided *Mann* in December 2016, the Court clarified two important points:  First, the Act "extend[s] *substantive* rights to defendants in a SLAPP." 150 A.3d at 1235 (emphasis added).  Second, the "likely to succeed on the merits" standard is "substantively the same" and "simply mirror[s]" the standards imposed by the Federal Rules of Civil Procedure.  *Id.* at 1238 n.32.  *See* Defendant's Memorandum of Points and Authorities in Support of Special Motion to Dismiss, ECF No. 13 ("Def. SLAPP Mem."), at 3-5.  In light of those authoritative holdings from D.C.'s highest court, and bedrock principles of federalism under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938), this Court should apply the Act in this action.  Here, the Act serves as an attorneys' fees provision, which has been deemed substantive and applicable in federal court.  *See* Def. SLAPP Mem. at 7-8.

In her Opposition to this motion (ECF No. 16 ("SLAPP Opp.")), Plaintiff wrongly asserts Roller is asking the Court to "ignore" or "upend established precedent."  SLAPP Opp. at 5, 6. On the contrary, Roller asks the Court to "fulfill [its] obligation" when sitting in diversity to "apply the substantive law of the jurisdiction in which it sits" by "looking to the published

2

opinions of the D.C. Court of Appeals." *Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 21-22 (D.C. Cir. 2014) (citation omitted).

Roller fully acknowledges that the D.C. Circuit stated in dicta in *Abbas* that the Act could not apply in federal court because the court interpreted the Act as imposing a standard "different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules 12 and 56." *Abbas*, 783 F.3d at 1335. *See* Def. SLAPP Mem. at 3-4 (discussing *Abbas* in detail). However, the *Abbas* court's dicta was expressly premised on the fact that "the D.C. Court of Appeals ha[d] never interpreted the D.C. Anti-SLAPP Act's likelihood of success standard to simply mirror the standards imposed by Federal Rules 12 and 56." 783 F.3d at 472. In *Mann*, the D.C. Court of Appeals quoted *Abbas*, and definitively stated "[w]e do so now." 150 A.3d at 1238 n.32. The *Mann* decision removes the underpinning for the *Abbas* court's conclusion that the Act answers the same question as the Federal Rules in a different way, which was the primary obstacle to the application of the Act. 783 F.3d at 1335.

Chief Judge Howell recently instructed that, "when faced with conflicting authority on D.C. law by the D.C. Circuit and the D.C. [Court of Appeals]," the views of the D.C. Court of Appeals "must govern" where that court "has spoken clearly and unmistakably to the current state of D.C. law." *See Easaw*, 253 F. Supp. 3d at 34 (applying 2015 D.C. Court of Appeals decision that directly contradicted 2014 D.C. Circuit decision interpreting D.C. law). That instruction is consistent with the well-settled principle that "the D.C. Court of Appeals is the final arbiter of D.C. law." *Hinton v. Combined Sys., Inc.*, 105 F. Supp. 3d 16, 28 n.7 (D.D.C. 2015). *See also Payne v. D.C. Gov't*, 722 F.3d 345, 353 (D.C. Cir. 2013) ("[O]ur analysis of the applicable District of Columbia statutes recognizes the District of Columbia Court of Appeals's interpretation as binding."); *Foulger-Pratt Residential Contracting, LLC v. Madrigal*

*Condominiums, LLC*, 779 F. Supp. 2d 100, 111-12 (D.D.C. 2011) ("It is well-settled that on issues of D.C. law, this Court defers to the rulings of the D.C. Court of Appeals.") (citing *Williams v. Martinez*, 586 F.3d 995, 1001 (D.C. Cir. 2009)).  When a federal court sits in diversity its "duty … is to achieve the same outcome [it] believe[s] would result if the District of Columbia Court of Appeals considered the case." *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1042-43 (D.C. Cir. 2010).  That task becomes straightforward where, as here, the D.C. Court of Appeals has spoken "clearly and unmistakably" to the issue. *Easaw*, 232 F. Supp. 3d at 35-36.[1]

We recognize that final resolution of whether the Act applies to a diversity action in federal court likely awaits a ruling from the D.C. Circuit.  But that does not relieve this Court in the meantime of its "obligation" to apply subsequent precedent of D.C.'s highest court interpreting the District's law, insofar as there is no conflict with the Federal Rules. *Metz*, 774 F.3d at 22.  Because, under the *Mann* Court's authoritative interpretation, the D.C. Anti-SLAPP Act does not conflict with the Federal Rules, and because, as the *Mann* Court affirmed further, it provides "substantive" rights to litigants, 150 A.3d at 1235, the Court should apply the statute to this diversity case.

## II. THE D.C. ANTI-SLAPP ACT, AS AUTHORITATIVELY INTERPRETED BY THE D.C. COURT OF APPEALS, IS CONSTITUTIONAL

The *Mann* Court's holding that the Anti-SLAPP Act imposes the same standards as the Federal Rules also nullifies Plaintiff's argument that the Act is unconstitutional.  Plaintiff's

---

[1] One district judge has declined to apply the Act, even after *Mann*, deferring until further guidance from the D.C. Circuit. *Deripaska v. Associated Press*, No. 1:17-cv-00913-ESH, at *5 (D.D.C. Oct. 17, 2017) (ECF No. 16).  However, that court acknowledged that its decision to maintain a divide between D.C. and federal courts on an issue of substantive D.C. law "will likely promote the type of forum-shopping that *Erie* intended to avoid." *Id.*  In any event, for the reasons above, we respectfully disagree with Judge Huvelle that the *Mann* decision "does not 'clearly and unmistakably' resolve the question" of whether the D.C. Anti-SLAPP Act conflicts with the Federal Rules. *Id.*

argument is based on the notion that the Act subverts a plaintiff's right to have her claim tried to a jury.  *See* SLAPP Opp. at 11-12 (quoting *3M Co. v. Boulter*, No. 11-cv-1527, 2012 WL 5245458, at *1 (D.D.C. Oct. 24, 2012) ("The Supreme Court has made it quite clear that Rule 56 sets the outer boundary for dismissing claims on the merits based upon a pretrial evaluation of the evidence; to go further infringes upon the Seventh Amendment right to a jury trial.")).  However, it is well settled that Federal Rules 12 (which governs a motion to dismiss) and 56 (which governs a motion for summary judgment) do not violate the Seventh Amendment.  *See, e.g.*, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) ("summary judgment does not violate the Seventh Amendment") (citing *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 319–321 (1902)); *Caldwell v. Obama*, 6 F. Supp. 3d 31, 44 n.8 (D.D.C. 2013) (holding that Seventh Amendment is inapplicable to a claim that fails as a matter of law); *cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326-29 (2007) (upholding constitutional challenge to Private Securities Litigation Reform Act, explaining "[a] court's comparative assessment of plausible inferences, while constantly assuming the plaintiff's allegations to be true [as in a Rule 12(b)(6) motion], we think it plain, does not impinge upon the Seventh Amendment right to jury trial").  In light of the D.C. Court of Appeals' decision in *Mann* that the D.C. Anti-SLAPP Act does not impose any different or more demanding standard than the Federal Rules, the Act does not conflict with the Seventh Amendment.  *See Mann*, 150 A.3d 1232-33 (holding that application of standard consistent with Federal Rule 56 achieves goals of Anti-SLAPP Act "while preserving the claimant's constitutional right to a jury trial").

**III.    THIS CASE FALLS SQUARELY WITHIN THE AMBIT OF THE ACT AND SHOULD BE DISMISSED**

Plaintiff disingenuously asserts that this case falls outside the scope of the D.C. Anti-SLAPP Act because Plaintiff and Roller were not "engaged in an ongoing political debate, with

5

each side expressing their respective opinions on a public policy issue." SLAPP Opp. at 8. But the Act does not require speakers to be engaged in a direct, one-on-one dialogue. The Act applies to any public statement "in connection with an issue of public interest." D.C. Code § 16-5501(1)(A) and (B). The conduct of credentialed White House journalists *in the White House* is indisputably an "issue of public interest." And criticism of the political implications of such conduct (again, in the White House) is, on its face, a statement on an issue of public interest. The Act also covers statements related to "a public figure," which Plaintiff does not dispute that both she and Mike Cernovich (who was the other the subject of the challenged statements) are. *Id.* § 16-5501(3).

Despite Plaintiff's new effort to disassociate this case from any "policy debate," SLAPP Opp. at 8, her own Complaint describes this case as arising from a "burgeoning gap within the world of journalism" as a result of the "2016 [presidential] campaign season." Compl. at 2. In Plaintiff's telling, "gatekeeper" journalists (like Roller) have waged a "political war on their ideological adversaries and grassroots competitors," like Plaintiff (who describes herself as a "politically-dissident journalist"). *Id*. at 2-3.

Standards for political journalism, with each side accusing the other of promoting "fake news," have indeed been a subject of intense discussion and public debate among journalists, politicians and the general public. More specific to this case, the issue of whether once-innocuous gestures and symbols have been adopted by white nationalists, and how such symbols should be interpreted, has likewise been extensively debated. *See* Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss, ECF No. 12, at 2-3 nn.3-4; Def. SLAPP Mem. at 10 n.10. That debate continues to this day: just last month, a White House intern made headlines for using the same gesture in a group photo with the President, with numerous

publications referring to it as a "known 'white power' sign." *See* Reply in Further Support of Motion to Dismiss at 1 nn.1-2.  The Act was specifically designed to prevent the use of a libel lawsuit to shut down such public debate, and to mitigate the chilling effect of such suits by allowing for an award of fees and costs.  *See Mann*, 150 A.3d at 1238.  It cannot seriously be disputed that this lawsuit falls squarely within the Act's ambit.

Because, as set forth in Roller's Motion to Dismiss pursuant to 12(b)(6), Plaintiff cannot state a claim as a matter of law for multiple, independently sufficient reasons, she cannot possibly show that she is likely to succeed on the merits.  Accordingly, the Court should dismiss the lawsuit both pursuant to Rule 12(b)(6) and the Act and, at the appropriate time and on the appropriate motion, order Plaintiff to reimburse Roller for her costs and attorney's fees in defending this lawsuit.  *See Doe v. Burke*, 133 A.3d 569, 571 (D.C. 2016) (holding that successful movant under Anti-SLAPP Act "is entitled to reasonable attorney's fees in the ordinary course—*i.e.*, presumptively—unless special circumstances in the case make a fee award unjust").

## CONCLUSION

For all of the reasons set forth above, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety with prejudice under the D.C. Anti-SLAPP Act, and that she should be awarded her fees and costs expended in this lawsuit.

Dated: January 12, 2018

Respectfully submitted,

/s/ *Laura R. Handman*
Laura R. Handman (DC Bar No. 444386)
Eric J. Feder (DC Bar No. 1048522)

DAVIS WRIGHT TREMAINE LLP

1919 Pennsylvania Avenue, N.W., Suite 800
Washington, DC  20006-3401
(202) 973-4200
(202) 973-4499 (fax)
laurahandman@dwt.com
ericfeder@dwt.com

*Attorneys for Defendant Emma Roller*

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I caused defendant Emma Roller's Reply Memorandum in Further Support of her Special Motion to Dismiss Pursuant to the D.C. Anti-SLAPP Act to be filed and served electronically via the Court's ECF system upon counsel of record.

Dated: January 12, 2018

/s/ *Laura R. Handman*
Laura R. Handman